# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

## BEALS v MICHIGAN

Docket No. 149901. Argued April 29, 2015. Decided June 18, 2015.

Theresa Beals, as personal representative of the estate of William T. Beals, brought an action in the Barry Circuit Court against the state of Michigan and William J. Harman. William Beals drowned while swimming in a pool at the Michigan Career and Technical Institute, a state residential facility, which provides vocational and technical training to students with disabilities. Harman was the only lifeguard on duty when the drowning occurred. Plaintiff accused the state of violating the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1101 *et seq*., and accused Harman of gross negligence. Both defendants moved for summary disposition. The court, Amy L. McDowell, J., denied the motions. Harman appealed, and the state filed a delayed application for leave to appeal. The Court of Appeals granted the state's delayed application for leave to appeal and consolidated the state's appeal with Harman's appeal. In an unpublished opinion per curiam, the Court of Appeals, METER, P.J., and SHAPIRO, J. (O'CONNELL, J., concurring in part and dissenting in part), reversed the trial court's denial of summary disposition with regard to plaintiff's claim under the PDCRA, but affirmed the trial court's denial of summary disposition with regard to plaintiff's claim of gross negligence against Harman. Harman sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant Harman's application for leave to appeal or take other action. 497 Mich 930 (2014).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, MCCORMACK, and VIVIANO, the Supreme Court *held*:

The governmental tort liability act, MCL 691.1401 *et seq*., affords broad immunity from tort liability to governmental agencies and their employees when they are engaged in the exercise or discharge of a governmental function. Exceptions to the act must be narrowly construed. Under MCL 691.1407(2), each employee of a governmental agency is immune from tort liability for an injury to a person caused by the employee while in the course of employment if (1) the employee is acting or reasonably believes he or she is acting within the scope of his or her authority, (2) the governmental agency is engaged in the exercise or discharge of a governmental function, and (3) the employee's conduct does not amount to gross negligence that is the proximate cause of the injury. For a governmental employee's conduct to be considered the proximate cause of an injury, that conduct must be the one most immediate, efficient, and direct cause of the injury. In this case, the one most immediate, efficient, and direct cause of William

Beals's death was that which caused him to remain submerged in the deep end of the pool without resurfacing. Harman's failure to act was not the proximate cause of William Beals's death even though timely action by Harman might have prevented the death. The trial court should have granted summary disposition in favor of Harman because Harman was entitled to governmental immunity.

Judgment of the Court of Appeals reversed with regard to Harman's entitlement to summary disposition.

Justice BERNSTEIN, dissenting, would have denied leave to appeal. It was undisputed that Harman was distracted, not in his designated position, and ignored several calls for help from the student who found William Beals's body. In the absence of other evidence indicating what caused William Beals to remain submerged, Harman's failure to rescue the deceased was the one most immediate, efficient, and direct cause of his death.

©2015 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.    Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano
                        Richard H. Bernstein

FILED June 18, 2015

S T A T E   O F   M I C H I G A N

SUPREME COURT

THERESA BEALS, Personal Representative
of the ESTATE Of WILLIAM T. BEALS,

      Plaintiff-Appellee,

v                              No. 149901

STATE OF MICHIGAN,

      Defendant,
and

WILLIAM J. HARMAN,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

This case requires the Court to consider whether defendant lifeguard's failure to intervene in the deceased's drowning constituted "the proximate cause" of his death. While governmental agencies and their employees are generally immune from tort liability under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*.,

MCL 691.1407(2)(c) provides an exception to this general rule when a governmental employee's conduct is both (1) grossly negligent and (2) "the proximate cause" of an injury, which this Court interpreted to mean the "most immediate, efficient, and direct cause" of that injury in *Robinson v Detroit*.[1]

Plaintiff brought the instant suit against defendant, a governmental employee, and pleaded avoidance of governmental immunity by alleging that defendant's grossly negligent behavior while lifeguarding and resulting failure to rescue plaintiff's drowning son constituted the proximate cause of his death. Subsequently, defendant filed a motion for summary disposition on the ground of governmental immunity, but the trial court denied defendant's motion. The Court of Appeals, in a split opinion, affirmed, concluding that a jury could reasonably find that defendant's failure to intervene constituted the proximate cause of the deceased's death. The Court of Appeals dissent instead concluded that defendant is immune from liability, because his actions were not the proximate cause, i.e., "the one most immediate, efficient, direct cause" of the deceased's death, as is required to impose tort liability under MCL 691.1407(2) and *Robinson*.

But for the applicable immunity statute, a question of fact may remain as to defendant's liability for the deceased's death. However, in light of the well-established principles of governmental immunity set forth by the Legislature and this Court, we agree with the Court of Appeals dissent that defendant is immune from tort liability. Applying this Court's rationale in *Robinson* to the instant case, defendant's failure to intervene in

---

[1] *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000).

2

the deceased's drowning cannot logically constitute the "most immediate, efficient, and direct cause" of his death. The causal connection between defendant's failure to intervene and the deceased's drowning is simply too tenuous for it to constitute the proximate cause of his death. In our view, it is readily apparent that the far more "immediate, efficient, and direct cause" of the deceased's death was that which caused him to remain submerged in the deep end of the pool without resurfacing. That the reason for the deceased's prolonged submersion in the water is unknown does not make that unidentified reason any less the proximate cause of his death.

Accordingly, we hold that the trial court erred by denying summary disposition to defendant, because the exception to governmental immunity articulated in MCL 691.1407(2) is inapplicable in the instant matter. We therefore reverse in part the judgment of the Court of Appeals, and remand this case to the Barry Circuit Court for entry of an order granting summary disposition in favor of defendant.

## I. FACTS AND PROCEEDINGS

The deceased, William Beals, a 19-year-old diagnosed with a learning disability and an unspecified level of autism, drowned on May 19, 2009, while swimming in a pool at the Michigan Career and Technical Institute (MCTI), a state residential facility providing vocational and technical training to students with disabilities. Beals and approximately 24 other disabled students were using the MCTI indoor swimming pool for a recreational swim. According to his mother, Beals was an "accomplished swimmer" who had been swimming independently for years. The only lifeguard on duty that evening was defendant William Harman, a certified lifeguard who was both an

3

employee and student of MCTI. The record indicates that Harman suffers from attention deficit disorder.

At some point during the recreational swim, Beals waded into the shallow end of the pool where he "surface dove" into the deep end and continued to swim underwater. He never resurfaced under his own power. There is no evidence in the record that Beals visibly struggled in the water or that Harman or any of the 24 other students in the pool area witnessed Beals in distress. Indeed, it was not until Beals had been underwater for approximately eight minutes that another student wearing goggles put his head underwater and noticed Beals's body in the deep end of the pool next to the wall. This student pulled Beals from the bottom of the pool after making as many as three unsuccessful attempts to call for Harman's attention. When Harman heard other students yelling for help, he raced to the deep end of the pool, removed Beals from the water, and attempted cardiopulmonary resuscitation (CPR) until other staff members arrived. Beals was then transported to a hospital where he was declared deceased. A subsequent autopsy revealed that the cause of Beals's death was "drowning" and the manner of death was "accidental." The underlying reason for Beals's accidental drowning is unknown.

On January 26, 2011, Beals's mother, Theresa Beals, filed suit in Barry Circuit Court as the personal representative of Beals's estate. Plaintiff sued both Harman and the State of Michigan, seeking economic and noneconomic damages for the alleged wrongful death of her son. She accused the state (MCTI) of violating the Persons with Disabilities

4

Civil Rights Act, MCL 37.1101 *et seq.*,[2] and Harman of gross negligence. In proofs developed by plaintiff, students at MCTI criticized Harman's attention to swimmers, describing him as "distracted" and indicating that he was talking to girls and playing with a football during the period in which Beals drowned. According to MCTI video surveillance footage of the events preceding the discovery of Beals's body, Harman did not once sit in the lifeguard observation stand, which, according to a report penned by plaintiff's expert, would have given Harman the best view of the pool, nor did Harman notice or observe that Beals had slipped under the water until the students called for his attention about eight minutes after Beals submerged in the deep end. Plaintiff does not allege, nor does the video indicate, that Harman caused Beals to enter the pool or that he took any action to influence Beals's behavior while Beals was in the water.

Harman moved for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity, asserting that his conduct was not "the proximate cause" of Beals's death, as is required to impose tort liability on a governmental employee under MCL 691.1407(2). The trial court issued an order denying summary disposition, finding that "reasonable minds could differ as to the question of gross negligence and if the proximate cause of death was the gross negligence of William Harman and/or the State of Michigan."

---

[2] The trial court denied the state's motion for summary disposition as to this claim, but the Court of Appeals unanimously reversed the trial court on this issue. Plaintiff did not appeal that ruling in this Court.

Harman appealed the trial court's decision in the Court of Appeals, which affirmed the trial court in a split opinion.[3] The majority upheld the trial court's denial of Harman's motion for summary disposition, holding that "[g]iven the evidence presented, reasonable minds could conclude that Harmon's [sic] failure to intervene constituted the one most immediate, efficient, and direct cause of Beals's death."[4] Judge O'CONNELL dissented in part, instead concluding that the undisputed facts establish that defendant's conduct cannot be deemed "the proximate cause" of Beals's death, and that the trial court should have granted summary disposition in favor of Harman under MCR 2.116(C)(7).[5]

Harman sought leave to appeal in this Court. We directed the Clerk to schedule oral argument on whether to grant the application or take other action.[6] We specifically requested that the parties address "whether defendant William J. Harmon's [sic] alleged failure to act was *the* proximate cause of the decedent's death. MCL 691.1407(2)(c)."[7]

## II. STANDARD OF REVIEW

The applicability of governmental immunity is a question of law that this Court reviews de novo on appeal.[8] This Court also reviews de novo a trial court's

---

[3] *Estate of Beals v Michigan*, unpublished opinion per curiam of the Court of Appeals, issued July 1, 2014 (Docket Nos. 310231 and 310565).

[4] *Id*. at 3-4.

[5] *Id*. at 2 (O'CONNELL, J., dissenting in part).

[6] See MCR 7.302(H)(1).

[7] *Beals v Michigan*, 497 Mich 930 (2014).

[8] *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002).

6

determination regarding a motion for summary disposition.[9]  "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law.  To survive such a motion, the plaintiff must allege facts justifying the application of an exception to governmental immunity.  [The reviewing court] consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them."[10]  "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether the claim is barred by immunity is a question for the court to decide as a matter of law."[11]

## III.  BACKGROUND

The GTLA, MCL 691.1401 *et seq*., affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function.[12]  The GTLA provides several exceptions to this general rule, all of which must be narrowly construed.[13]  One such exception that governs

---

[9] *Douglas v Allstate Ins Co*, 492 Mich 241, 256; 821 NW2d 472 (2012), citing *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

[10] *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001) (citations omitted).

[11] *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003) (citation omitted).

[12] MCL 691.1407(1) ("Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.").

[13] *Nawrocki v Macomb Co Road Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000) (stating "the immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed.") (citations omitted).

7

the tort liability of governmental employees like Harman is contained in MCL 691.1407(2), which states in pertinent part:

> [E]ach . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . if all of the following are met:
>
>     (a)    The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
>     (b)    The governmental agency is engaged in the exercise or discharge of a governmental function.
>
>     (c)    The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

There is no dispute regarding whether defendant Harman acted within the scope of his authority as an employee of a governmental agency engaged in the exercise of a governmental function. Moreover, Harman does not challenge whether his conduct amounted to gross negligence.[14] Accordingly, the sole issue presented in the instant appeal is whether Harman's conduct constituted "the proximate cause" of Beals's death for purposes of MCL 691.1407(2)(c).

This Court explained the proper interpretation of the term "the proximate cause" for purposes of MCL 691.1407(2)(c) in *Robinson v Detroit*, and held that in order for a governmental employee's grossly negligent conduct to be considered the proximate cause of an injury, that conduct must be "the one most immediate, efficient, and direct cause of

---

[14] We do not opine as to whether Harman's conduct was grossly negligent. Harman does not explicitly concede that his conduct was grossly negligent, nor does he argue that it was not. Harman's position instead rests solely on his argument that his conduct was not "the proximate cause" of Beals's death as a matter of law.

the injury or damage . . . ."[15]  In *Robinson*, this Court considered "whether the city of Detroit or individual police officers face civil liability for injuries sustained by passengers in vehicles fleeing from the police when the fleeing car caused an accident."[16]  The plaintiff passengers alleged that the police officers were not immune from liability, because their gross negligence in chasing the fleeing vehicles was the proximate cause of the collisions.  This Court disagreed.  First, the Court articulated that because " 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates one cause."[17]  The *Robinson* Court then concluded that "the Legislature provided tort immunity for employees of governmental agencies unless the employee's conduct amounts to gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage, i.e., the proximate cause."[18]  Applying this construction, this Court held that

> the officers in question are immune from suit in tort because their pursuit of the fleeing vehicles was not, as a matter of law, "the proximate cause" of the injuries sustained by the plaintiffs.  The one most immediate, efficient,

---

[15] *Robinson*, 462 Mich at 462.

[16] *Id*. at 444.

[17] *Id*. at 462.

[18] *Id*.  Before *Robinson*, this Court had effectively interpreted the phrase "the proximate cause" to mean "a proximate cause" in *Dedes v Asch*, 446 Mich 99; 521 NW2d 488 (1994).  The majority in *Robinson* overruled *Dedes*, noting that "a proximate cause" and "the proximate cause" have distinct legal meanings, and "the Legislature has shown an awareness that it actually knows that the two phrases are different."  *Robinson*, 462 Mich at 460.

and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles.[19]

Accordingly, "summary disposition for the defendant officers was proper because reasonable jurors could not find that the officers were 'the proximate cause' of the injuries."[20]

## IV. ANALYSIS AND APPLICATION

Applying this Court's rationale in *Robinson* to the instant case, Harman's failure to intervene in Beals's drowning cannot reasonably be found to be "the one most immediate, efficient, and direct cause" of Beals's death. While it is unknown what specifically caused Beals to remain submerged under the water, the record indicates that Beals voluntarily entered the pool and voluntarily dove under the surface of the shallow end into the deep end without reemerging. Although plaintiff alleges that Harman's inattentiveness prevented him from attempting a timely rescue of Beals, in our view, it is readily apparent that the far more "immediate, efficient, and direct cause" of Beals's death was that which caused him to remain submerged in the deep end of the pool without resurfacing.

Under the facts of this case, Harman's inaction does not constitute the "most immediate, efficient, and direct cause" of Beals's drowning. Harman did not cause Beals to enter the pool and swim to the deep end, an act the accomplished swimmer performed voluntarily, nor did Harman cause Beals to remain submerged in the water, which was

---

[19] *Id*. at 462.

[20] *Id*. at 463, citing *Moll v Abbott Laboratories*, 444 Mich 1, 28, n 36; 506 NW2d 816 (1993).

10

undeniably a more direct cause of Beals's death than any inaction on the part of Harman. That we lack the reason for Beals's prolonged submersion in the water does not make that unidentified reason any less the "most immediate, efficient, and direct" cause of his death. Consequently, while Harman's failure to intervene may be counted among the myriad reasons that Beals did not survive this occurrence, it certainly was not "the proximate cause" of his death for purposes of MCL 691.1407(2)(c).

In concluding to the contrary, the Court of Appeals majority appears to have conflated Harman's alleged breach of duty with the proximate cause of Beals's death. In holding that "reasonable minds could conclude Harman's failure to intervene constituted the one most immediate, efficient, and direct cause of Beals's death," the majority focused on Harman's obligation to rescue Beals and reasoned that Harman's grossly negligent conduct resulted in his failure to notice Beals's distress and respond appropriately.[21] While the majority pointed to evidence alleging that proper intervention and rescue could have prevented Beals's death,[22] this speculation does not establish a proximate relationship between Harman's breach and Beals's death. Stated simply, that Harman breached his duty does not necessarily entail that his inaction was the most *direct cause* of Beals's drowning. Indeed, Harman did not *cause* Beals's drowning; he merely failed to observe it happening and to attempt a rescue in response. That we can only

---

[21] *Beals*, unpub op at 3-4.

[22] *Id*. at 3. As the Court of Appeals noted, plaintiff's expert, professional aquatics safety and water rescue consultant Gerald M. Dworkin, opined in a preliminary report that Beals's death "could have been and should have been easily prevented" and that a timely rescue would have provided a window of opportunity "for a successful outcome with early CPR, early defibrillation, and early Advanced Cardiac Life Support."

11

speculate as to Beals's survival had Harman timely intervened further supports our conclusion that Harman's conduct was not the proximate cause of Beals's death.[23]

Further, we find the present case analogous to *Dean v Childs*,[24] which also involved a claim that a governmental employee's failure to intervene to prevent a death constituted the proximate cause of that death. In *Dean*, the plaintiff's home was allegedly set on fire by an arsonist, resulting in the death of the plaintiff's four children. The plaintiff sued the defendant firefighter, claiming that he was grossly negligent in fighting the fire and that he took " 'affirmative actions that significantly increased the risk of danger' " based on an expert's conclusion that the defendant caused the fire " 'to be pushed' " toward the children and that this prevented a rescue attempt.[25] The defendant

---

[23] It is noteworthy that there were 24 other students in the pool at the time of Beals's drowning, none of whom noticed Beals in distress or attempted to rescue him before he was found at the bottom of the pool. These students had no duty to prevent Beals from drowning, and it is undisputed that their conduct was not the proximate cause of Beals's death. Although Harman did have a duty to intervene in Beals's drowning, he acted no differently than the other 24 students present at the time of Beals's drowning, and was thus no more the *cause* of Beals's death than were the other students. While Harman may have breached a duty that the other students did not possess, that is distinct from the cause of Beals's drowning, which cannot be attributed to the actions or inactions of Harman or the other students.

Moreover, given that there is no evidence that Beals struggled in the water or displayed any signs of distress, it is unclear that even a prudent lifeguard would have been able to observe and prevent Beals's drowning. This further illustrates that, based on the facts presented in this case, the connection between Beals's death and Harman's breach of duty is simply too tenuous for Harman's negligence to constitute the proximate cause of Beals's death.

[24] *Dean v Childs*, 474 Mich 914 (2005), rev'g 262 Mich App 48; 684 NW2d 894 (2004).

[25] *Dean*, 262 Mich App at 51-52, 58.

12

moved for summary disposition based on governmental immunity, but the trial court denied his motion. The Court of Appeals majority opinion affirmed, opining that

> [w]hile it is likely that the arsonist was "a proximate cause" of the children's deaths, plaintiff's evidence, if proven, would show that the children would have survived the fire if [the defendant] had not acted in a grossly negligent manner. As the factual development of plaintiff's claim may justify recovery, the trial court properly denied [the defendant's] motion for summary disposition on the ground of statutory immunity.[26]

This Court reversed the Court of Appeals for the reasons stated in Judge GRIFFIN's dissent, thereby adopting his conclusion that the defendant was immune from tort liability under MCL 691.1407(2) because " 'the most immediate, efficient and direct cause' " of the children's deaths "was the fire itself, not defendant's alleged gross negligence in fighting it."[27] Although the defendant's alleged gross negligence might have been a " 'substantial factor' " in the deaths, this causal connection was insufficient to meet the governmental immunity threshold standard of "the" proximate cause.[28]

As with the situation of the firefighter in *Dean*, Harman's failure to intervene in Beals's already-initiated drowning does not transform his inaction into the proximate cause of Beals's death, even though plaintiff's expert opined that timely intervention might have prevented Beals's death.[29] When a fire is consuming a house, that a prudent

---

[26] *Id*. at 58.

[27] *Id*. at 61 (GRIFFIN, J., dissenting in part) (citation omitted). Judge GRIFFIN acknowledged that "[i]f it were proven that an arsonist started the fire, the arsonist may be the proximate cause of the deaths." *Id*. at 61 n 5.

[28] *Id*. at 62 (citation omitted).

[29] See note 23 of this opinion.

13

firefighter might have slowed or stopped the fire does not automatically transform his failure to do so into the proximate cause of a death by fire. Similarly, if a swimmer accidently drowns, that a prudent lifeguard might have rescued the swimmer from drowning does not automatically transform his failure to do so into the proximate cause of a death by drowning.[30]

Accordingly, under *Robinson*, plaintiff cannot, as a matter of law, establish that Harman was "the proximate cause" of Beals's death. Consequently, because no jury could reasonably find that Harman's failure to intervene in Beals's drowning was the proximate cause of his death on the basis of the facts presented in this case, the trial court should have granted summary disposition in favor of Harman under MCR 2.116(C)(7), as Harman is entitled to the protections of governmental immunity.[31] While we need not hypothesize scenarios in which a governmental employee's failure to intervene is so "immediate, direct, and efficient" to the injury that it breaks the existing causal connection, supersedes any other cause, and becomes "the one most immediate, efficient,

---

[30] Moreover, it is more clear in the instant case that the defendant government employee was not the proximate cause of the relevant death than was the case in *Dean*, as Harman did not take any type of affirmative action to increase the danger posed to Beals as the defendant allegedly did in *Dean* by pushing the fire to the back of the home.

[31] While we agree with the dissent's conclusion that Harman is protected by governmental immunity, we do not endorse Judge O'CONNELL's statement that "[a] chain of events . . . cannot logically be *the one most direct and immediate cause* of a death, and as such cannot be the source of tort liability against a governmental employee." *Beals*, unpub op at 2 (O'CONNELL, J., dissenting in part). Because Harman's participation in a chain of events was not the proximate cause of Beals's death in the instant matter, we need not address under what circumstances a chain of events might constitute the proximate cause of an injury or death in a different factual scenario.

14

and direct cause" of the injury, we reject the defendant's suggestion that a governmental employee's failure to intervene can *never* constitute the proximate cause of an injury.[32] Nevertheless, under the facts presented in this case, Harman's failure to intervene was not "the one most immediate, efficient, and direct cause" of Beals's death.

It bears repeating that this case arose in the scope of governmental employment. Harman was a governmental employee and the clearly established underlying principle is that he is generally immune from tort liability if he is in performance of a governmental function. The Legislature has carved out a very narrow exception to that immunity for employees whose conduct is (1) grossly negligent and (2) "the proximate cause" of another's person's injury, which this Court has interpreted to mean the most direct cause of that injury.[33] Applying these well-established principles to the instant case, it is evident that Harman is protected from liability by governmental immunity.

## V. CONCLUSION

We hold that Harman's conduct did not constitute "the proximate cause" of the deceased's death as a matter of law and that the exception to governmental immunity articulated in MCL 691.1407(2) is inapplicable. Consequently, the trial court should have granted summary disposition in favor of Harman under MCR 2.116(C)(7), because he is entitled to the protections of governmental immunity. Accordingly, we reverse in

---

[32] See, e.g., *Fuller v Hessler*, 226 Mich 311, 314-315; 197 NW 524 (1924) (holding, outside of the governmental immunity context, that proximate cause does not exist between an earlier cause and the injury where "independent human agency . . . broke the relation of alleged cause and effect.").

[33] *Robinson*, 462 Mich at 462.

15

part the judgment of the Court of Appeals, and we remand this case to the Barry Circuit

Court for entry of an order granting summary disposition in favor of defendant Harman.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Bridget M. McCormack
David F. Viviano

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

THERESA BEALS, Personal Representative
of the ESTATE OF WILLIAM T. BEALS,

      Plaintiff-Appellee,

v                                  No. 149901

STATE OF MICHIGAN,

      Defendant,
and

WILLIAM J. HARMAN,

      Defendant-Appellant,

_____

BERNSTEIN, J. (*dissenting*).

Under the governmental tort liability act, MCL 691.1401 *et seq.*, a governmental employee is immune from tort liability unless his or her conduct amounts "to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2)(c). It is only the question of causation that is now before us. This Court has previously interpreted "the proximate cause" to mean the "the one most immediate, efficient, and direct cause of the injury or damage . . . ." *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000).

I believe that the lifeguard's failure to rescue the deceased was the one most immediate, efficient, and direct cause of death. Although an autopsy indicated that the deceased died by drowning, there is no evidence as to how this came to pass. Defendant

William J. Harman attempts to use the unknown in his favor, arguing that whatever caused the deceased to remain submerged was the proximate cause of his death. However, there is no indication that the deceased intentionally stayed at the bottom of the pool or suffered any sort of cataclysmic health event that would have kept him there.

Contrary to the prevailing image of drowning victims to display obvious signs of distress, drowning can happen both quickly and quietly.[1]

> Because drowning can occur quickly and quietly, it is not surprising that lifeguards, distracted from keeping an eye on the water by other assigned duties, have failed to spot drowning persons in time to rescue them. . . . It is clear, therefore, that swimming facilities must be staffed adequately to ensure effective and continuous patron surveillance, and that lifeguards should be given no other task that would distract them from this work.[2]

It is undisputed here that Harman, the sole lifeguard on duty, was distracted from his duties; he was not in his designated position, which would have given him the best vantage point of the pool, and he ignored several calls for help from the student who found the deceased. Pointing to an unknown health event as the one most immediate,

---

[1] "Drowning persons usually struggle to keep their mouth above the surface of the water in order to breath. Struggling to stay afloat and possibly suffocating, they are rarely able to call out or wave their arms . . . . These characteristics of drowning . . . emphasize the need for lifeguards as a source for continuous surveillance and immediate action." Christine M. Branche & Steven Stewart (eds), Centers for Disease Control and Prevention, *Lifeguard Effectiveness: A Report of the Working Group* (2001), available at <http://www.cdc.gov/HomeandRecreationalSafety/pubs/LifeguardReport-A.pdf> (accessed June 10, 2015) [http://perma.cc/C9VL-Z4CP].

[2] *Id*. The United States Lifesaving Association (USLA) also supports this recommendation: " 'Lifeguards assigned to supervise an aquatic area shall not be subject to duties that would distract or intrude their attention from proper observation of persons in the waterfront area, or that prevent immediate assistance to persons in distress in the water.' " *Id*. (citation omitted).

efficient, and direct cause of death places on plaintiff the unenviable burden of proving a negative, because there is no indication that any such health event occurred.

In the absence of any evidence that would support such a finding, it seems clear that it is the lifeguard's failure to ensure effective and continuous surveillance of the students that was the one most immediate, efficient, and direct cause of death. Because I would hold that the lifeguard's conduct was "the proximate cause" of death, I would find that the exception to governmental immunity articulated in MCL 691.1407(2) is applicable and I would deny leave to appeal.

Richard H. Bernstein