*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL BERRY, Personal Representative of the
ESTATE OF MICHAEL WHYTE,

        Plaintiff-Appellant,

v

DETROIT TRANSPORTATION CORPORATION,
DETROIT PEOPLE MOVER, EDITH BOWLES,
and CYNTHIA GEHLERT,

        Defendants-Appellees,

and

JOHN DOE,

        Defendant.

UNPUBLISHED
October 6, 2022

No. 357222
Wayne Circuit Court
LC No. 16-009474-NO

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

        In a tragic accident, Michael Whyte died after falling onto the tracks of the Detroit People Mover (DPM) train. Plaintiff, the Estate of Michael Whyte, sued multiple defendants, including Edith Bowles and Cynthia Gehlert, the on-duty system control operators charged with watching the DPM video monitors. The trial court granted summary disposition in favor of Bowles and Gehlert under MCR 2.116(C)(7), finding that they were entitled to governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, because neither employee acted in a grossly negligent manner. The Estate appeals from that order, arguing that the trial court erred by holding that Bowles and Gehlert were not grossly negligent as a matter of law. We agree that Bowles was not grossly negligent, but we conclude that a question of fact remains as to the gross negligence of Gehlert. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

This case arises out of an incident that occurred on the night of May 15, 2016, in Detroit, that resulted in the death of Michael Whyte. Whyte, while intoxicated with a blood alcohol level of 0.32, walked off the station platform between two train cars at the unmanned Times Square station of the DPM, and was killed by the moving train. DPM trains are remotely operated from a control room by system control operators. The operators also monitor security camera footage from each DPM station; the control room contains a video wall with 64 individual monitors that display video from all stations. Bowles and Gehlert were the system control operators monitoring the video feeds at the time of the incident.

The Estate filed a complaint in July 2016, alleging several negligence claims against Bowles, Gehlert, DPM, and the Detroit Transportation Corporation (DTC).[1] In October 2017, the DTC moved for summary disposition under MCR 2.116(C)(7), asserting immunity from suit under the GTLA. The trial court denied the DTC's motion, but on appeal, this Court reversed and remanded for entry of an order granting summary disposition to the DTC. *Estate of Michael Whyte v Detroit Transp Corp*, unpublished opinion of the Court of Appeals, issued October 17, 2019 (Docket No. 343161).

On remand, Bowles and Gehlert moved for summary disposition under MCR 2.116(C)(7), arguing that they were entitled to governmental immunity under the GTLA because there was no question of fact that either employee acted with gross negligence. The trial court granted their motion. The Estate now appeals.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(7). *Beals v Michigan*, 497 Mich 363, 369-370; 871 NW2d 5 (2015). Likewise, whether a party is entitled to governmental immunity is a question of law that we review de novo. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). We also review questions of statutory interpretation de novo. *Frank v Linkner*, 500 Mich 133, 140-141; 894 NW2d 574 (2017). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Summary disposition is proper under MCR 2.116(C)(7) when a claim is barred by "immunity granted by law." MCR 2.116(C)(7). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). The governmental employee has the burden to raise and prove his or her entitlement to immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008).

---

[1] The DTC owns and operates the DPM.

## III. GROSS NEGLIGENCE

The Estate contends that the trial court erred in holding that defendants Bowles and Gehlert were not grossly negligent. At the very least, the Estate argues, the evidence creates a question of fact as to Gehlert's gross negligence.

The GTLA "affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Beals*, 497 Mich at 370. "The GTLA provides several exceptions to this general rule, all of which must be narrowly construed." *Id*. Relevant to this appeal, the GTLA authorizes immunity from tort liability for governmental employees when these conditions are shown:

> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The . . . employee's . . . conduct does not amount to *gross negligence* that is the proximate cause of the injury or damage. [MCL 691.1407(2) (emphasis added).]

In sum, a governmental employee is entitled to governmental immunity if (1) the employee is acting reasonably and within her scope of authority, (2) the agency is engaged in a governmental function, and (3) the employee does not commit gross negligence that is the proximate cause of the injury. There is no dispute that Bowles and Gehlert were acting in the scope of their authority while performing a governmental function on behalf of their employer. Therefore, Bowles and Gehlert are entitled to summary disposition under MCR 2.116(C)(7) if no question of fact exists concerning whether Bowles and Gehlert engaged in grossly negligent conduct that was the proximate cause of Whyte's death.

The GTLA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Put differently, employee liability under the GTLA is limited to times when the employee's conduct is "substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). Therefore, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Id*. at 122-123. This Court has characterized gross negligence as "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). "Generally, allegations or evidence of inaction or claims that a defendant could have taken additional precautions are insufficient" to establish gross negligence. *Bellinger v Kram*, 319 Mich App 653, 660; 904 NW2d 870 (2017), citing *Tarlea*, 263 Mich App at 84-86, 90-92. Despite this high bar, "[t]he determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007).

The Estate argues that there is a question of fact about the gross negligence of Bowles and Gehlert. The Estate largely fails to explain how Bowles was grossly negligent but asserts that

neither employee was monitoring the surveillance cameras at the time that Whyte fell onto the tracks. This statement is refuted by the record evidence. Deposition testimony from Bowles and her supervisor, Barbara Hansen, as well as video from inside the control room, all establish that Bowles was scanning the 64 video monitors of the various train stations in the DPM system. The Estate has presented no evidence to the contrary. Instead, the Estate suggests that Bowles could not have been watching the monitors because if she had, she "would have seen Mr. Whyte on the Times Square platform at some point." This argument is speculative. Given the unrebutted evidence that Bowles was watching the surveillance monitors, as part of her job duty, a reasonable fact-finder could not conclude that Bowles's conduct constituted a "willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." See *Tarlea*, 263 Mich App at 90. The fact that Bowles did not observe Whyte fall between the train cars is not enough on its own to create a question of fact concerning gross negligence. Accordingly, the trial court did not err by concluding that Bowles was entitled to governmental immunity and granting summary disposition in her favor.

As for Gehlert, the Estate contends that there is a material question of fact as to gross negligence because Gehlert was working on nonessential reports rather than monitoring the surveillance cameras. At the time of the accident, Gehlert was at the communication work station (CWS), while Bowles ran the operations work station (OWS). Gehlert admitted that she was not watching the station video monitors at the time of the accident because she was completing month-end reports. Gehlert's supervisor, Hansen, testified at her deposition that it was "not preferable" that Gehlert was working on monthly reports rather than watching the video monitors. And Alex Motton, another system control operator, agreed that the main priority for the person at the CWS is to watch the 64 monitors in the control room and respond timely if an issue arises; the main responsibility for the employee at the OWS is train operation.[2] Construing the evidence in the light most favorable to the Estate, we believe there is a genuine issue of material fact whether Gehlert was grossly negligent by failing to monitor the surveillance cameras. By neglecting her primary job duty, a fact-finder could reasonably conclude that Gehlert's conduct was more than a failure to take additional precautions; it was a complete dereliction of her main job duty. Therefore, a question of fact exists as to whether Gehlert showed a "willful disregard of precautions or measures to attend to safety." See *Tarlea*, 263 Mich App at 90.

Defendants argue that Gehlert could not be grossly negligent because the control operators "share the task of ensuring that one of them is scanning the bank of 64 monitors." Under this view, it would not matter whether Gehlert was completing nonessential reports or whether she was engaged in some other unnecessary activity; Gehlert could not be grossly negligent because Bowles was scanning the 64 monitors on her own. We are unpersuaded that Bowles's scanning of the surveillance monitors necessarily insulates Gehlert from any liability. Irrespective of Bowles's actions, Gehlert's individual choice to disregard her primary duty of watching the surveillance monitors could lead a reasonable fact-finder to conclude that she showed "a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Thus, the fact

---

[2] Motton was a third control operator working on the night of Whyte's death, but Motton was on his break during the time when the incident occurred. Gehlert had replaced Motton at the CWS when Motton went on his break.

that Bowles was scanning the surveillance monitors does not insulate Gehlert from a finding of gross negligence. Because a question of fact exists concerning the gross negligence of Gehlert, the trial court erred by granting summary disposition in Gehlert's favor.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates