*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATASHA SLATER, Personal Representative of the
ESTATE OF PRISCILLA SLATER,

        Plaintiff-Appellee,

v

DETECTIVE SERGEANT JAMES
RUTHENBERG, DEPUTY CHIEF JOHN
VORGITCH, OFFICER AVOLON OWENS,
OFFICER TAEYLOR RYANS, OFFICER
NATALIE ANDERSON, OFFICER CHRISTINE
WHITE, OFFICER ELIJAH LOWERY, OFFICER
DANIEL MCCAW, OFFICER CHRIS JOSEPH, and
LIEUTENANT CHRIS SHAFT,

        Defendants-Appellants.

UNPUBLISHED
November 12, 2024
10:27 AM

No. 366162
Wayne Circuit Court
LC No. 21-007076-NO

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

MARIANI, J. (*concurring*).

I concur in the result reached by the majority—that plaintiff has failed to demonstrate a genuine issue of material fact such that her claims can survive summary disposition. The record, in my view, shows that Priscilla Slater deserved better than what she received from the Harper Woods Police Department while in its custody and care, and that certain defendants may well have been negligent in their handling of her. But the law provides plaintiff only a narrow path to relief for defendants' actions (or lack thereof), limiting her recourse to breaches of a "much less demanding standard of care." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). As a result, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). Instead, to survive summary disposition, "a plaintiff must adduce proof of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id*. at 123 (quotation marks omitted); see also *Bellinger v Kram*, 319 Mich App 653, 659-660; 904 NW2d 870 (2017) (noting that "[g]rossly negligent conduct must be conduct that is substantially more than negligent" and that instead amounts to "a willful disregard of safety measures and a singular disregard for

-1-

substantial risks") (quotation marks and citations omitted).  Plaintiff has, for the most part, failed to adduce such proof here.[1]

That said, I believe the record does at least create a genuine factual dispute regarding whether CA Owens was grossly negligent with respect to the cell checks he was supposed to perform during the hours preceding and spanning Ms. Slater's death.  Plaintiff has produced evidence that, when viewed in the light most favorable to her, casts doubt on whether CA Owens did, in fact, perform the checks, or instead simply filled out the cell-check log entry sheet to make it seem like he had.  See, e.g., *Bellinger*, 319 Mich App at 660 (recognizing that "evidence that a defendant engaged in affirmative actions contrary to professionally accepted standards and then sought to cover up those actions does establish gross negligence").  Nonetheless, assuming CA Owens was grossly negligent in disregarding this responsibility, I do not believe plaintiff has demonstrated a genuine factual dispute about whether that gross negligence was a cause in fact of Ms. Slater's death.

"[C]ause in fact, also known as factual causation . . . , requires showing that but for the defendant's actions, the plaintiff's injury would not have occurred."  *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017) (quotation marks and citation omitted).  "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.  A mere possibility of such causation is not enough . . . ."  *Skinner v Square D Co*, 445 Mich 153, 165; 516 NW2d 475 (1994) (quotation marks and citation omitted).  As the majority notes, the record does not particularly indicate that Ms. Slater's seizure itself would have been observed during a scheduled cell check, nor does it contain evidence that any attempt to intervene or summon medical assistance once the seizure had begun would have made a difference.[2]  And while plaintiff points to instances in the video footage of Ms. Slater shifting around in her bed during the hours preceding the seizure, plaintiff has identified no evidence to substantiate the notion that, had this behavior been observed during a cell check, it would or should have signaled that Ms. Slater was in need of medical assistance.  See, e.g., *Ray*, 501 Mich at 70-71 (explaining that, in *Beals v Michigan*, 497 Mich 363; 871 NW2d 5 (2015), the fact that "it was unclear that even a prudent lifeguard would have been able to observe and prevent the deceased's drowning . . . further illustrated that the causal connection [between

---

[1] Indeed, at oral argument, plaintiff's counsel effectively (and to me, wisely) acknowledged as much with respect to many of the named defendants.  And as to the substance of plaintiff's proofs, it bears particular note that, while plaintiff's gross-negligence argument stresses defendants' failure to duly recognize and respond to Ms. Slater's clear state of intoxication, plaintiff's evidence regarding Ms. Slater's actual need for medical intervention relies not just on her high level of intoxication, but also on her acute alcohol tolerance and withdrawal.  The record, however, lacks evidence that defendants recklessly disregarded this aspect of Ms. Slater's medical history and condition—a gap that strikes me as, at the least, significant.

[2] The same holds true for any of the cell checks that were to be performed after those of CA Owens on that day.

the defendant lifeguard's conduct and the drowning] was simply too tenuous") (cleaned up).[3] Thus, even when CA Owens is assumed to have disregarded the cell checks as plaintiff claims, the record fails to create a genuine issue of fact "that 'but for' [this disregard], [Ms. Slater's death] would not have occurred." *Ray*, 501 Mich at 63 (quotation marks and citation omitted).

In sum, I believe that plaintiff has raised very legitimate concerns with how defendants treated Ms. Slater, and that those concerns should be heard and heeded, and prompt change. But given the limitations of the instant record and of the law that controls plaintiff's access to relief in this case, I must agree that summary disposition in favor of defendants is warranted.

/s/ Philip P. Mariani

---

[3] Moreover, and more generally, plaintiff's evidence of the likely impact of Ms. Slater receiving such assistance at any point during the events at issue in this case is rather thin; plaintiff points to the affidavit of her causation expert, but that only opined, without elaboration, that "had Priscilla Slater been sent to a hospital following her arrest or during her detention at the jail, appropriate treatment could have been given and Ms. Slater could have been saved." See *McMaster v DTE Energy Co*, 509 Mich 423, 445-446; 984 NW2d 91 (2022) (deeming an expert opinion that the alleged negligence "could have" been a cause was "too speculative" because, "to defeat summary disposition, a plaintiff must do more than present evidence that the defendant's conduct possibly caused the injury").