*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MELISSA WILLIAMS, Individually and as Personal
Representative of the ESTATE OF MARDELLE R.
WILLIAMS, and DIANA PENA,

        Plaintiffs-Appellees,

v

FIDUCIARY SERVICES NORTH INC, BRENDA
MILLER, LINDA KEHR, DEPARTMENT OF
HEALTH AND HUMAN SERVICES, also known
as ADULT PROTECTIVE SERVICES, CENTRA
WELLNESS NETWORK, and HOPE NETWORK
BEHAVIORAL HEALTH SERVICES, doing
business as BAYHAVEN INTEGRATED CARE,

        Defendants,

and

RON STIER,

        Defendant-Appellant.

UNPUBLISHED
February 03, 2025
1:31 PM

No. 367099
Grand Traverse Circuit Court
LC No. 2023-036489-NO

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

        In this appeal concerning governmental immunity as applied to an Adult Protective Services (APS) employee, defendant, Ron Stier, appeals by right the trial court's order denying in part his summary disposition motion under MCR 2.116(C)(7) (immunity granted by law) and

-1-

(C)(8) (failure to state a claim upon which relief can be granted).[1] Plaintiffs, Melissa Williams (Melissa)[2] and Diana Pena, are relatives of Mardelle Williams (Mardelle), whom they characterized as a developmentally disabled adult who died while receiving inpatient medical care and supervision. After Mardelle's death, plaintiffs sued Stier and others, alleging that Mardelle died because of their cumulative acts and omissions. On appeal, Stier argues that the trial court erred by denying his summary disposition motion in relation to plaintiffs' negligence-based tort claims because it misapplied the proximate-causation standard under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* Stier further argues that the trial court erred by denying his summary disposition motion in relation to plaintiffs' intentional tort claim because, as a matter of law, he acted on Mardelle's behalf in good faith. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

This case arises out of a series of events that occurred in the years preceding Mardelle's death in May 2022. Plaintiffs filed a lengthy verified complaint in January 2023, followed by an amended verified complaint in February 2023, in which they named as defendants Brenda Miller (Mardelle's former court-appointed guardian), Fiduciary Services North, Inc. (Miller's guardianship company), Linda Kehr (Mardelle's former court-appointed attorney), Stier (Mardelle's former APS caseworker), APS, Centra Wellness Network (Mardelle's former community mental health placement service), and Hope Network Behavioral Health Services (the owner of Mardelle's former adult foster care home, Bayhaven Integrated Care). Plaintiffs alleged numerous acts and omissions on the part of defendants that purportedly caused Mardelle's health to decline and led to her eventual death.

In their amended verified complaint, plaintiffs explained that Mardelle's longtime medical conditions left her susceptible to falls. Mardelle sustained injuries in two falls that occurred in May 2020, which led to her hospitalization until September 2020. While Mardelle was hospitalized, the Benzie County Probate Court appointed Miller as her plenary guardian and Kehr as her attorney for purposes of guardianship and placement proceedings. At some point, Stier became Mardelle's APS caseworker. Upon her discharge from the hospital, Mardelle's physician allegedly recommended that she receive one-on-one care. Although she purportedly had knowledge of the recommendation, Miller—in consultation with Centra Wellness Network—placed Mardelle in the Bayhaven Integrated Care adult foster care home, a facility that did not provide one-on-one care. While there, Mardelle allegedly fell on multiple occasions, sustained fall-related injuries, developed a gum infection, was given excess medication, and was neglected by her caretakers.

In March 2021, Miller transferred Mardelle from Bayhaven Integrated Care to NeuroBehavioral Hospital in Crown Point, Indiana. While there, Mardelle was allegedly

---

[1] The trial court granted Stier's summary disposition motion in part on other bases, which are not at issue on appeal.

[2] Melissa filed suit both individually and in her capacity as personal representative of the Estate of Mardelle R. Williams.

malnourished, given excess medication, sustained at least one urinary tract infection, and was hospitalized for pneumonia as well as episodes of hypernatremia (an abnormally high blood-sodium level) and hyponatremia (an abnormally low blood-sodium level).

In February 2022, Miller transferred Mardelle from NeuroBehavioral Hospital to Courtyard Manor, an assisted living facility in Farmington Hills, Michigan. In May 2022, Mardelle died. A medical examiner attributed her death to sepsis caused by pneumonia. The medical examiner also noted that Mardelle was emaciated and suffered from pressure ulcers at the time of her death.

Plaintiffs asserted multiple causes of action against Stier, including negligence, gross negligence, and intentional infliction of emotional distress. They alleged, broadly, that Stier failed to prevent Mardelle's deficient representation, placements, medical treatment, and supervision despite having knowledge of the same. According to plaintiffs, Melissa and her personal attorney informed Stier and other defendants of such conditions through various correspondence and probate court filings, some of which included Mardelle's medical records, which purportedly evidenced her steadily-declining health and additional treatment needs. In March 2023, Stier moved for summary disposition under MCR 2.116(C)(7) and (C)(8). He argued that he was immune from liability for plaintiffs' claims because he was a governmental employee acting within the scope of his authority as an APS caseworker, and his conduct did not amount to gross negligence that proximately caused plaintiffs' alleged injuries. He further argued that plaintiffs failed to state claims upon which relief could be granted because plaintiffs' factual allegations, even if accepted as true, did not establish that Stier acted negligently or engaged in extreme or outrageous conduct.

In July 2023, the trial court denied Stier's summary disposition motion. It held that Stier was not entitled to summary disposition on the basis of governmental immunity in relation to plaintiffs' negligence-based tort claims because there remained genuine issues of material fact as to whether Stier was grossly negligent and proximately caused plaintiffs' alleged injuries. In doing so, it articulated the proximate-causation standard as follows:

> To establish proximate cause, the plaintiff must demonstrate that it was foreseeable that the governmental employee's conduct could result in harm to the plaintiff. The gross negligence of a governmental employee is *a proximate cause* of plaintiff's harm, as required for the gross-negligence exception to governmental immunity under the GTLA to apply, if the harm caused to the plaintiff was the general kind of harm the governmental employee negligently risked. [Emphasis added.]

Yet it also stated in a footnote that "[a] governmental employee's gross negligence is *the proximate cause* of an injury if it is the one most immediate, efficient, and direct cause preceding the injury." (Emphasis added). The trial court further held that Stier was not entitled to summary disposition on the basis of governmental immunity in relation to plaintiffs' claim for intentional infliction of emotional distress because there remained a genuine issue of material fact as to whether Stier acted in good faith. It therefore concluded that summary disposition was not warranted under MCR 2.116(C)(7). Furthermore, the trial court held that plaintiffs sufficiently pleaded claims for negligence, gross negligence, and intentional infliction of emotional distress such that summary disposition was not warranted under MCR 2.116(C)(8). This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We likewise review de novo the applicability of governmental immunity to a particular set of circumstances. *Champine v Dep't of Transportation*, 509 Mich 447, 452; 983 NW2d 741 (2022). Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial." *Odom*, 482 Mich at 466 (quotation marks and citation omitted). We accept the contents of the complaint as true "unless contradicted by the evidence provided." *Id*. (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159 (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. See also MCR 2.116(G)(5). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

## III. NEGLIGENCE AND GROSS NEGLIGENCE

On appeal, Stier argues that the trial court erred by denying his motion for summary disposition of plaintiffs' negligence-based tort claims because it misapplied the operative proximate-causation standard under the GTLA. We agree.

"The GTLA, MCL 691.1401 *et seq*., affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Beals v Michigan*, 497 Mich 363, 370; 871 NW2d 5 (2015). Under the GTLA, governmental employees are immune from liability for negligence-based torts, provided that the following conditions are met: (1) "the individual was acting or reasonably believed that he was acting within the scope of his authority," (2) "the governmental agency was engaged in the exercise or discharge of a governmental function," and (3) "the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage." *Odom*, 482 Mich at 479-480. See also MCL 691.1407(2).

Here, the parties agree that Stier was acting within the scope of his authority as an APS caseworker, and APS was engaged in the discharge of a governmental function. At issue is the third prong of the governmental-immunity analysis: whether Stier engaged in grossly-negligent conduct that proximately caused plaintiffs' alleged injuries.

The GTLA defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). And "proximate cause considers whether the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Nathan v David Leader Mgt, Inc*, 342 Mich App 507, 522-523; 995 NW2d 567 (2022) (quotation marks and citation omitted). The proximate-causation inquiry "requires a

determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017). It "does not entail the weighing of factual causes but instead assesses the legal responsibility of the actors involved." *Id.* at 71-72. "Although there generally may be more than one proximate cause to an injury, a governmental employee's conduct cannot be the proximate cause under the GTLA unless it was the one most immediate, efficient, and direct cause of the plaintiff's injuries." *Dougherty v Detroit*, 340 Mich App 339, 353-354; 986 NW2d 467 (2021). See also *Robinson v Detroit*, 462 Mich 439, 461-462; 613 NW2d 307 (2000) (emphasizing the Legislature's choice to use "the proximate cause" as opposed to "a proximate cause"). In other words, the proximate-causation inquiry under the GTLA requires "considering [the] defendant's actions alongside any other potential proximate causes to determine whether [the] defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries." *Ray*, 501 Mich at 76 (quotation marks and citation omitted). A governmental employee's conduct may be a "contributing factor" to a plaintiff's injuries without being the proximate cause under the GTLA. See *Dougherty*, 340 Mich App at 358-359.

In its written opinion and order, the trial court considered whether Stier proximately caused plaintiffs' alleged injuries in light of the following standard:

> To establish proximate cause, the plaintiff must demonstrate that it was foreseeable that the governmental employee's conduct could result in harm to the plaintiff. The gross negligence of a governmental employee is a proximate cause of plaintiff's harm, as required for the gross-negligence exception to governmental immunity under the GTLA to apply, if the harm caused to the plaintiff was the general kind of harm the governmental employee negligently risked.

Although the trial court articulated the operative proximate-causation standard in a subsequent footnote, it applied the incomplete proximate-causation articulated in the body of its written opinion and order when it concluded that there remained genuine issues of material fact as to whether Stier proximately caused plaintiffs' alleged injures. In reaching its conclusion, the trial court explained that, "despite knowledge of [Mardelle's] injuries, inadequate and/or improper treatment and continued physical and mental deterioration, Stier did not seek alternative placement and refused to withdraw the Petition for Appointment of Brenda Miller and/or refused to consider or offer an alternate guardian for [Mardelle]." By identifying other culpable actors (such as Miller and Mardelle's caretakers) and omitting others (such as Kehr, Bayhaven Integrated Care, and Centra Wellness Network) without weighing the foreseeability of the consequences of Stier's alleged acts and omissions in comparison, the trial court erroneously considered whether Stier was *a* proximate cause rather than *the* proximate cause, as required under the GTLA. In other words, the trial court erroneously failed to consider whether Stier was the "the *one* most immediate, efficient, and direct cause" of plaintiffs' alleged injuries. See *Dougherty*, 340 Mich App at 353-354 (emphasis added). For this reason, we vacate the portion of the trial court's order denying Stier's summary disposition motion on the basis of governmental immunity in relation to plaintiffs' negligence-based tort claims.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

On appeal, Stier argues that the trial court erred by denying his motion for summary disposition of plaintiffs' intentional-infliction-of-emotional-distress claim on the basis of governmental immunity because, as a matter of law, he acted on Mardelle's behalf in good faith. We disagree.

Intentional infliction of emotional distress, as reflected in its name, is an intentional tort. *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). At common law, governmental employees were immune from liability for intentional torts, provided that certain conditions were satisfied. *Odom*, 482 Mich at 472-473. See also *Ross v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984). The GTLA retained the common-law test for governmental immunity from liability for intentional torts. *Odom*, 482 Mich at 472-473. See also MCL 691.1407(3). In *Odom*, 482 Mich at 479-480, our Supreme Court outlined the three-part test for determining whether a lower-ranking governmental employee is entitled to such governmental immunity. It explained that, in order to obtain governmental immunity, a lower-ranking governmental employee bears the burden of establishing that (1) "[t]he acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority," (2) "the acts were undertaken in good faith, or were not undertaken with malice," and (3) "the acts were discretionary, as opposed to ministerial." *Id*. at 480.

Here, the parties agree that Stier was a governmental employee acting within the course of his employment in order to carry out a discretionary act. At issue is the second prong of the governmental-immunity analysis: whether Stier's actions were undertaken in good faith or without malice. The good-faith prong of the governmental-immunity analysis is subjective in nature. *Id*. at 481-482. It cannot be satisfied "if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id*. at 475 (quotation marks and citation omitted).

To begin, Stier argues that under the Social Welfare Act, MCL 400.1 *et seq.*, he is presumed to have acted in good faith in relation to his conduct as an APS worker. To support this premise, Stier relies on MCL 400.11c(1), which provides, in part, that:

> A person acting in good faith who makes a report or who assists in the implementation of sections 11 to 11f is immune from civil liability that might otherwise be incurred by making the report or by assisting in the making of the report. A person making a report or assisting in the implementation of sections 11 to 11f is presumed to have acted in good faith. [MCL 400.11c(1) (footnotes omitted).]

We need not determine whether Stier is entitled to the presumption that he acted in good faith in relation to his conduct as an APS worker. Even if Stier was presumed to have acted in good faith, plaintiffs' allegations, if proven, would be sufficient to overcome the presumption. In their amended verified complaint, plaintiffs alleged that Stier knew of evidence that Mardelle was improperly supervised, improperly medicated, repeatedly injured, and regularly malnourished but refused to seek alternative placements or guardians on her behalf. Such allegations, when accepted as true, are sufficient to establish that Stier acted with malice—that is, either an intent to harm or such indifference to whether harm would result as to be the equivalent of a willingness that it does. See *Odom*, 482 Mich at 466, 475. The trial court therefore did not err by denying Stier's motion

for summary disposition of plaintiffs' intentional-infliction-of-emotional-distress claim on the basis of governmental immunity.

## V. CONCLUSION

We affirm in part, vacate in part, and remand for further proceedings. On remand, the trial court must apply the operative proximate-causation standard under the GTLA, as set forth in Part III of this opinion. Specifically, the trial court should address whether under the GTLA "[the] defendant's actions alongside any other potential proximate causes to determine whether [the] defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries." *Ray*, 501 Mich at 76 (quotation marks and citation omitted). We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ James Robert Redford