*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHIRANDA MARTIN, Personal Representative of
the ESTATE OF MARQUIS OLIVER

UNPUBLISHED
March 23, 2023

Plaintiff-Appellant,

v

No. 360533
Ingham Circuit Court
LC No. 20-000291-NO

DEPUTY GASPER MENDEZ, DEPUTY KAY
VANELLS, DEPUTY JASON HOLMES, DEPUTY
CHRIS HAGERMAN, DEPUTY HEATHER
SALAZAR, and STEVE DEKETT,

Defendants-Appellees,

and

MID MICHIGAN EMERGENCY EQUIPMENT
SALES AND SERVICE, LLC, and JAMES
ANDERSON,

Defendants.

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Plaintiff's decedent, Marquis Oliver, tragically died during transport from the Ingham County Courthouse to the Ingham County Jail after he slipped out of his belly chains, unlocked the van door, and stepped out of the vehicle while it was traveling at highway speed. Plaintiff brought this negligence action under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, against several employees of the Ingham County Sheriff's Office (ICSO). Relevant to this appeal, the trial court granted summary disposition under MCR 2.116(C)(7) and (C)(10) for defendants Deputy Gaspar Mendez and Steve DeKett on plaintiff's claim under the GTLA's gross negligence exception to governmental immunity, MCL 691.1407. Plaintiff appeals from this ruling. Because reasonable minds could not conclude that the conduct of Deputy Mendez or

DeKett was "the proximate cause" of Oliver's death under the GTLA, the trial court did not err by granting summary disposition in their favor. Accordingly, we affirm.

## I. BACKGROUND

The ICSO uses transport vans—standard passenger vans retrofitted for inmate transport—to take inmates housed in the Ingham County Jail to and from their court hearings. DeKett, the sole ICSO mechanic, was responsible for maintenance on existing vans and involved with the purchase of new vans. In 2019, DeKett helped purchase a new van to replace one of the ICSO transport vans. The new van was intended for multi-purpose use: transporting inmates and transporting ICSO staff to off-site locations. DeKett brought the old and new van to Mid-Michigan Emergency Equipment Sales and Service ("Mid-Michigan") to transfer any interior security features from the old van to the new one. Mid-Michigan completed some of the work, but its owner, James Anderson, told DeKett that Mid-Michigan did not have the correct window screen available. Anderson asked DeKett to pick the new van up while Mid-Michigan waited for the necessary parts to arrive. In early October 2019, DeKett retrieved the new van and returned it to the ICSO lot.

DeKett knew that the new van should not be driven for inmate transport use upon its return and denied putting it into service for that purpose at that time. Deputy Mendez, however, claimed that DeKett told him the new van was in service and available for inmate transport use. Deputy Mendez drove the new van several times, including on October 23, 2019. That morning, Deputy Mendez transported Oliver, an inmate in the Ingham County Jail, along with other inmates to circuit court in the new van without incident. As a maximum-security inmate, Oliver was restrained with handcuffs, belly chains, and leg irons. In the afternoon, Deputy Mendez returned to pick up the inmates after their court proceedings. Deputy Mendez listened into Oliver's court hearing, which had not yet occurred when Deputy Mendez arrived. During this hearing, the circuit court judge expressed concern with Oliver's mental well-being and ordered that, in the discretion of the attorneys, Oliver be sent for either another forensic evaluation or to an independent psychiatrist for a competency and responsibility evaluation.

When Oliver's hearing finished, court security and Deputy Mendez took Oliver and ten other inmates to the new van and loaded them on board. Soon into the short drive back to the Ingham County Jail, Oliver slipped out of his belly chains, unlocked the passenger side sliding door, and stepped out of the moving van, which was traveling about 65 to 70 miles per hour on US-127. Oliver died of blunt force trauma from injuries sustained from his collision with the ground. An investigation determined that the rear door locks in the new van had not been disabled, which allowed Oliver to unlock the door while the vehicle was traveling at high speeds.

Plaintiff, as personal representative of Oliver's estate, filed suit against several individuals. Count I of her complaint alleged gross negligence by defendants who were governmental employees—ICSO deputies and DeKett —and negligence by Anderson and Mid-Michigan. Count II related solely to Deputy Mendez, alleging negligent operation of a government-owned vehicle in violation of MCL 691.1405. Defendants filed several motions for summary disposition. Relevant to this appeal, the trial court dismissed count I against Deputy Mendez, concluding that plaintiff could not establish proximate causation against him because Oliver's own actions were the one most immediate, efficient, and direct cause of his injuries. The trial court also held that

proximate causation could not be shown with respect to DeKett. Therefore, the trial court entered summary disposition in their favor on count I. As for count II, the trial court granted Deputy Mendez's motion for summary disposition because Deputy Mendez could not be held individually liable for ordinary negligence in the operation of a motor vehicle under the GTLA. Plaintiff now appeals the orders granting summary disposition for Deputy Mendez and DeKett.[1]

## II. STANDARDS OF REVIEW

Defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), but the trial court did not specify under which subrule it granted defendants' motion. We construe the trial court's ruling as falling under MCR 2.116(C)(7) and (C)(10) because it considered documentary evidence beyond the pleadings. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). We review de novo a trial court's decision on a motion for summary disposition. *Beals v Michigan*, 497 Mich 363, 369-370; 871 NW2d 5 (2015). Likewise, whether a party is entitled to governmental immunity is a question of law that we review de novo. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). De novo review means that we review the legal issue independently, giving "respectful consideration, but no deference" to the trial court's conclusion. *Wasik v Auto Club Ins Assoc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355848); slip op at 2.

Under MCR 2.116(C)(7), summary disposition is appropriate when a claim is barred by "immunity granted by law." MCR 2.116(C)(7). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). If a genuine issue of material fact exists after properly considering all the evidence, dismissal is inappropriate. *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). But "[i]f the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether the claim is barred by immunity is a question for the court to decide as a matter of law." *Beals*, 497 Mich at 370.

Under MCR 2.116(C)(10), a trial court may only grant summary disposition if, considering all evidence submitted by the parties in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

---

[1] The trial court also granted summary disposition on various grounds in favor of the other defendants, but plaintiff does not appeal those rulings.

## III. DISCUSSION

Plaintiff argues that the trial court erred by concluding that no genuine factual dispute existed whether Deputy Mendez and DeKett acted with gross negligence that was the proximate cause of Oliver's death.

The GTLA "affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Beals*, 497 Mich at 370. "The GTLA provides several exceptions to this general rule, all of which must be narrowly construed." *Id.* A governmental employee has the burden to raise and prove their entitlement to immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). Relevant to this appeal, the GTLA authorizes immunity from tort liability for governmental employees when the following conditions are shown:

> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

It is undisputed that Deputy Mendez and DeKett were acting in the scope of their authority while performing a governmental function on behalf of their employer. Therefore, Deputy Mendez and Dekett were entitled to summary disposition if no genuine issue of material fact existed concerning whether they engaged in grossly negligent conduct that was the proximate cause of Oliver's death.

We need not decide whether there was evidence that Deputy Mendez and DeKett acted with gross negligence because even assuming that they did, reasonable minds could not differ on the question of proximate causation. For purposes of the GTLA, Oliver's own conduct, not any alleged gross negligence by Deputy Mendez or DeKett, was "the proximate cause" of Oliver's death.

As stated above, a governmental employee is not entitled to immunity from tort liability if the employee engaged in "gross negligence that is *the proximate cause* of the injury or damage" to the plaintiff. MCL 691.1407(2)(c) (emphasis added). A plaintiff may rely on circumstantial evidence to establish causation, but the circumstantial proof "must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). "If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law." *Black v Shafer*, 499 Mich 950, 951; 879 NW2d 642 (2016).

Separating proximate causation from factual causation is not always an easy task. In an effort to provide guidance for lower courts, our Supreme Court, in *Ray v Swager*, 501 Mich 52, 64-65; 903 NW2d 366 (2017), clarified "the role that factual and legal causation play when analyzing whether a defendant's conduct was 'the proximate cause' of a plaintiff's injuries under the GTLA." The Court explained:

-4-

In any negligence case, including one involving a government actor's gross negligence, a court must determine whether the defendant's negligence was a cause in fact of the plaintiff's injuries . . . . But the court must also assess proximate cause, that is, legal causation, which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim. A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury. [*Id*. at 65 (quotation marks and citations omitted).]

"[A]n actor cannot be a 'proximate cause' without also being a 'but-for cause.' " *Id*. at 67 (citation omitted). Thus, "[i]f factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue." *Id*. at 64. Further, *Ray* instructed that "before an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent . . . ." *Id*. at 74.

While more than one proximate cause may contribute to an injury, our Supreme Court has interpreted "the proximate cause" for purposes of MCL 691.1407(2)(c) to mean "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000). "Determining whether an actor's conduct was 'the proximate cause' under the GTLA does not involve a weighing of factual causes. Instead, so long as the defendant is *a* factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was *the* proximate cause." *Ray*, 501 Mich at 74. Put differently, the GTLA proximate cause analysis requires this Court to "consider[] defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id*. at 76, citing *Robinson*, 462 Mich at 446.

We agree with the trial court that Oliver's own actions were the "one most immediate, efficient, and direct cause" of his death. To arrive at this conclusion, we must assess whether Oliver's conduct was a factual cause and a proximate cause, and then, weighing all potential proximate causes, determine whether Oliver's actions were "the" proximate cause of his own death. See *Ray*, 501 Mich at 73-74. First, Oliver's own conduct was undoubtedly a factual cause of his death. But-for Oliver's voluntary actions, he would not have died of blunt force trauma. Second, Oliver's own conduct was at least a proximate cause of his death. The evidence supports that Oliver was himself negligent as he failed to exercise care that a reasonably careful person would use. See *Ray*, 501 Mich at 75 (stating that adults are held to the reasonable person standard when determining the degree of care); see also M Civ JI 10.02 ("Negligence is the failure to use ordinary care. Ordinary care means the care a reasonably careful person would use."). Oliver's conduct, culminating in his voluntary action to step out of the moving van, was objectively unreasonable, and his death was a legally foreseeable result of that conduct.

Third and finally, assuming that the actions of Deputy Mendez and DeKett were also each factual causes and proximate causes of Oliver's death, we conclude that, considered alongside Oliver's actions, reasonable minds would not differ that Oliver's own conduct was "the proximate

cause" of his death.[2]  Under the circumstances, it was highly foreseeable—if not nearly certain—that unlocking the sliding door and stepping out of the van while it traveled at highway speed would result in death or severe bodily injury to Oliver.  Oliver's death was a far more immediately, efficiently, and directly foreseeable result of his own conduct than any actions by Deputy Mendez or DeKett.  It was directly foreseeable that stepping out of a fast-moving vehicle would result in death or serious injury.  On the other hand, not only was defendants' conduct more removed-in-time than Oliver's actions, but it was also far less foreseeable that defendants' conduct would lead to an inmate's death from exiting the moving vehicle.  For instance, it was far less foreseeable that DeKett's alleged gross negligence—putting an inmate transport van into service without disabling its locking mechanisms—would lead to a restrained inmate unlocking the door of the moving van and stepping out of the vehicle.  Similarly, it was far less foreseeable that any alleged gross negligence by Deputy Mendez, including loading Oliver onto an insecure van with knowledge of his mental instability, would result in Oliver's death.  This is particularly true because Oliver was restrained with handcuffs, belly chains, and leg irons when deputies loaded him onto the van to return to the jail.  Therefore, reasonable minds could not conclude that Deputy Mendez's or DeKett's conduct preceding Oliver's exit from the van was "the one most immediate, efficient, and direct cause" of Oliver's death.  Because plaintiff failed to establish a genuine issue of material fact whether alleged gross negligence by Deputy Mendez and DeKett was "the proximate cause" of Oliver's death, the trial court did not err by granting summary disposition in their favor.[3]

Affirmed.

/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney

---

[2] Defendants rely heavily on this Court's decisions in *Kruger v White Lake Twp*, 250 Mich App 622; 648 NW2d 660 (2002), and *Cooper v Washtenaw Co*, 270 Mich App 506; 715 NW2d 908 (2006), to argue that Oliver's own conduct was "the proximate cause" of his death for purposes of the GTLA.  We generally agree with plaintiff that these cases lack meaningful value here.  Not only do they predate *Ray*, but they appear to commit the error highlighted by *Ray*, in that they "did not assess the legal responsibility of any of the actors involved, but instead attempted to discern whether any of the other factual causes was a more direct cause of plaintiff's injury than defendant's actions."  *Ray*, 501 Mich at 74.  That said, for the reasons discussed, under the proper analysis from *Ray*, the "one most immediate, efficient, and direct cause" of Oliver's death was his own conduct.

[3] It is unnecessary to address defendants' alternative arguments that plaintiff's claim was barred by the wrongful conduct rule or the comparative fault statute, or that plaintiff's claim failed under the public duty doctrine.  Further, in her brief on appeal, plaintiff argues that the trial court erred by granting summary disposition for Deputy Mendez on plaintiff's claim of negligent operation of a motor vehicle under MCL 691.1405, without allowing plaintiff an opportunity to amend her complaint to add Ingham County as a party.  At oral argument, plaintiff's counsel represented that this issue was now moot because of a separate lawsuit filed against Ingham County.  We accept counsel's representation, and therefore decline to address this issue further.