*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT LEWIS BEAL,

Plaintiff-Appellant,

v

MIDWEST RECOVERY AND ADJUSTMENT, INC, MATTHEW CASSEL, JEFFREY HARRINGTON, PUBLIC SERVICE CREDIT UNION, CREDIT UNION FINANCIAL SOLUTIONS, LLC, and PRA LOCATION SERVICES, formerly known as PRA LOCATION SERVICES, LLC,

Defendants,

and

JEFFREY STANTON,

Defendant-Appellee.

UNPUBLISHED
August 3, 2023

No. 360638
Wayne Circuit Court
LC No. 17-007759-NO

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Plaintiff Robert Lewis Beal appeals as of right the trial court's order granting summary disposition for defendant, Officer Jeffrey Stanton, on Beal's claims of gross negligence and malicious prosecution. Beal argues that genuine issues of material fact existed on each of his claims and contends that the trial court improperly refused to consider the affidavit of his expert when deciding the motion for summary disposition. The trial court properly granted summary disposition for Officer Stanton, so we affirm.

## I. BACKGROUND

The incident underlying Beal's lawsuit occurred nearly a decade ago. On December 3, 2014, Beal drove to a Kroger grocery store in Canton in a Kia Sorento, which was subject to repossession. Matthew Cassel and Jeffrey Harrington, who worked for Midwest Recovery and Adjustment at the time, located the Sorento in the Kroger parking lot. According to Cassel and Harrington, Beal impeded their attempts to repossess the Sorento and hit a Ford Taurus that Harrington was occupying as Beal fled the parking lot. Beal drove the Sorento to a nearby Walmart in Van Buren Township, where Cassel and Harrington again located the Sorento. A physical altercation ensued, and law enforcement was contacted.

Sergeant Michael Moening, Officer Ryan Barry, and Officer Stanton of the Van Buren Township Police Department were dispatched to the scene. Officer Stanton spoke with Cassel and Harrington, who were at the north end of the Walmart parking lot. Cassel and Harrington told Officer Stanton that they had an altercation with Beal in the parking lot. Cassel and Harrington also reported the Taurus was damaged because Beal hit it with the Sorento. Officer Stanton told Cassel and Harrington to contact the Canton Police Department about the vehicle damage that occurred in the Kroger parking lot. At some point, Sergeant Moening informed Officer Stanton that "he made contact with an individual on the south side of the parking lot." Officer Stanton drove his vehicle "to where Sergeant Moening was talking to [Beal] on the south side of the parking lot." Officer Barry was also present.

When Beal was asked by Officer Barry and Sergeant Moening for identification, Beal claims he "reached into [his] pocket to hand them a stack of documents which included [his] Michigan driver's license and some business documents." According to Beal, one of the documents was Articles of Organization for a limited-liability company signed by David Johnson, Beal's business partner. Beal alleges he corrected Officer Barry and Sergeant Moening after he realized they believed his name was David Johnson. Officer Stanton, on the other hand, testified that Beal first told officers his name was "David Lowis Johnson," and later stated his name was "David Louis Johnson." Finally, Beal was identified as "Robert Beal," and officers learned that he had multiple outstanding warrants for his arrest.[1]

Officer Stanton placed Beal under arrest for "providing false identification." Cassel and Harrington were not arrested. Officer Stanton completed an incident report and served Beal with

---

[1] In 2009, Beal was convicted of felonious assault, MCL 750.84, in Oakland Circuit Court and was sentenced to a term of imprisonment. Beal was granted parole, and he was released from prison in January 2011. While on parole, Beal was convicted of (1) use of false pretenses to defraud in the amount of $20,000 or more, MCL 750.218(5)(a); (2) uttering and publishing, MCL 750.249; and (3) writing an insufficient check of $500 or more, MCL 750.131(3)(c). These criminal proceedings took place in Washtenaw Circuit Court. Sentencing was scheduled to take place in January 2013. Beal did not appear at sentencing, and a bench warrant was issued for his arrest. In February 2013, Beal "failed to report to his parole field agent . . . or to make any subsequent report," which was a violation of the terms of his parole. A "parole absconder warrant" was issued for Beal's arrest.

a citation for violating MCL 257.324(1)(h). Following his arrest, Beal was taken into custody by the Michigan Department of Corrections (MDOC) and was charged with a litany of parole violations. On January 16, 2015, Beal's parole hearing was held before Timothy Baywal. Beal pleaded guilty "to failing to report to his field agent on or about February 4, 2013 or to make any subsequent report . . . ." Cassel, Harrington, and Officer Stanton testified at the hearing about damage to the Sorento and the Taurus. Beal denied that he hit the Taurus with the Sorento and testified that Cassel and Harrington attacked him without provocation. Baywal found Beal's testimony to be incredible and Officer Stanton's testimony to be credible. Baywal concluded that Beal violated his parole by engaging in assaultive, threatening, and abusive behavior by "ramming [his] vehicle into" the Taurus.

In March 2015, the Parole Board revoked Beal's parole with a denial period of 12 months. The Parole Board extended the denial of parole for 18 months in June 2015. Later that month, Beal was sentenced in Washtenaw Circuit Court on his 2013 convictions for which he originally failed to appear. The court sentenced Beal to 23 months to 10 years' imprisonment on the use of false pretenses conviction, 23 months to 14 years' imprisonment on the uttering and publishing conviction, and 15 months to 24 months' imprisonment on the writing an insufficient check conviction. Beal was later granted parole, and after completing his sentence, was released from prison in May 2017. Shortly after his release, Beal was charged with violating Van Buren Township Ordinance, § 58-31, which prohibits "interfer[ing] with or hinder[ing] any police officer . . . while in the discharge or apparent discharge of his duty."[2] A jury acquitted Beal of that charge.

Beal sued in Wayne Circuit Court against several entities and individuals, including Officer Stanton. In relevant part, Beal raised a claim of malicious prosecution against Officer Stanton and alleged that Officer Stanton was grossly negligent on December 3, 2014. Officer Stanton moved for summary disposition, arguing genuine issues of material fact did not exist on Beal's malicious prosecution and gross negligence claims. In the alternative, Officer Stanton argued he was entitled to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. Beal opposed the motion, arguing genuine issues of material fact existed for trial. The trial court granted Officer Stanton's motion. In doing so, the court declined to consider the affidavit of Beal's proposed expert, Bodashia Grimm. Beal now appeals the decision granting summary disposition for Officer Stanton.[3]

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). On de novo review, we evaluate the legal issue independently, giving "respectful consideration, but no deference" to the

---

[2] It is unclear from the record whether the citation for violating MCL 257.324(1)(h) was formally dismissed or whether it was amended to the charge for violating the ordinance.

[3] Claims against the other defendants were either dismissed during litigation in federal court or under stipulated orders of dismissal in Wayne Circuit Court. These orders are not relevant to this appeal.

trial court's conclusion. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 695; 992 NW2d 332 (2022). Officer Stanton moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Although the trial court did not specify under which subrule it granted Officer Stanton's motion, we construe the trial court's ruling as falling under MCR 2.116(C)(10) because the court relied on documentary evidence beyond the pleadings. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The reviewing court considers affidavits, pleadings, depositions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).

## III. MALICIOUS PROSECUTION

Plaintiff argues the trial court erred by granting summary disposition in favor of Officer Stanton on the malicious prosecution claim.

To establish a claim of malicious prosecution, a plaintiff has the burden to prove

(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. [*Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 378; 572 NW2d 603 (1998).]

When brought against a police officer, a malicious prosecution claim is viable only when the officer "knowingly swears to false facts in a complaint, without which there is no probable cause." *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995) (quotation marks and citations omitted). That is, there must be evidence giving rise to the inference that Officer Stanton "knowingly included false facts in his incident report, without which the prosecutor could not have concluded there was probable cause[.]" *Id.* (quotation marks and citation omitted).

Beal asserts that Officer Stanton lacked probable cause to conclude that Beal provided false identification in violation of MCL 257.324(1)(h). Probable cause is present " 'where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " *People v Hammerlund*, 504 Mich 442, 451; 939 NW2d 129 (2019), quoting *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). "Circumstantial evidence, coupled with those inferences arising therefrom, is sufficient to establish probable cause." *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014) (quotation marks and citation omitted).

Officer Stanton documented the relevant events of December 3, 2014 in his incident report. The report states that he was dispatched to Walmart "on a report of a physical fight in the parking

lot." Officer Stanton interviewed Cassel and Harrington, who reported that Beal interfered with their attempts to repossess the Sorento in a Kroger parking lot. Cassel and Harrington also reported that Beal "rammed" the Sorento into the Taurus. The report states that Sergeant Moening located Beal, who provided "three names (Johnson/David/Lowis then Johnson/David/Louis then Beal/Robert)." The report notes that the first two names "were false" and "the third was verified as the correct name." Using the correct name, the officers determined that Beal had "outstanding felony warrants out of Lansing Tether Unit and Washtenaw County."

Officer Stanton placed Beal under arrest for "providing false identification" and issued a citation under MCL 257.324(1)(h), which states:

> A person shall not . . . [f]urnish to a peace officer false, forged, fictitious, or misleading verbal or written information identifying the person as another person, *if the person is detained* for a violation of this act or of a local ordinance substantially corresponding to a provision of this act. [Emphasis added.]

There is no evidence that Beal was "detained" for violating the Motor Vehicle Code, MCL 257.301 *et seq*., or a substantially corresponding local ordinance when he allegedly provided false identification. As a result, there was not probable cause to believe Beal violated MCL 257.324(1)(h). But Officer Stanton did not include information in the report that Beal was "detained" for a violation of the Motor Vehicle Code or similar ordinance. That is, Officer Stanton did not "knowingly include[] false facts in his incident report" suggesting Beal had been apprehended for violating the Motor Vehicle Code or a local ordinance. *Payton*, 211 Mich App at 395 (quotation marks and citation omitted). The charge under MCL 257.324(1)(h) was dismissed or amended because it was legally unsound, not because Officer Stanton knowingly provided false facts to the prosecutor to support a finding of probable cause.

Ultimately, after Beal's release from prison in May 2017, a misdemeanor complaint was filed against Beal, charging him instead with a violation of Van Buren Township Ordinance, § 58-31. This complaint, which listed Officer Stanton as the complaining witness, stated:

> [Beal] did interfere with or hinder any police officer . . . while in the discharge or apparent discharge of his duty, to wit: providing 2 false names (David Lowis Johnson and David Louis Johnson) to Van Buren Police Department police officers while the police officers were discharging their duties by investigating a complaint of an assault and battery in which [Beal] was a suspect.

The facts supporting the complaint appear to derive from Officer Stanton's incident report. Beal does not explain or rationalize which facts from the report were false. Rather, Beal argues that Officer Barry and Sergeant Moening testified at the jury trial "that they were not hindered or prevented from performing their duties" by Beal.[4] Even if true, the facts contained in Officer Stanton's report are the only relevant inquiry for reviewing a malicious prosecution claim against

---

[4] In reality, Officer Barry and Sergeant Moening generally testified that they could not remember if they were prevented from performing any tasks by Beal. The misdemeanor trial against Beal occurred in April 2018, more than three years after the incident.

a police officer. See *Payton*, 211 Mich App at 395. And again, Beal has not established that Officer Stanton knowingly included any false facts in that report. See *id.*

Additionally, contrary to Beal's arguments on appeal, Officer Stanton's report does not reflect that Beal gave false information about his identity in Officer Stanton's presence. Rather, the report states: "Officers attempted to identify" Beal's identity, and Beal provided false names. Importantly, in determining whether probable cause exists, an officer may rely on information provided by other officers. See *Nguyen*, 305 Mich App at 753-754. Beal acknowledges that he provided Officer Barry and Sergeant Moening with documents that bore the name "David Johnson." While Beal claims that he also provided his driver's license and corrected the officers after they believed his name was "David Johnson," it is undisputed that Beal provided the officers with documents that contained David Johnson's identifying information. Thus, Beal has not established any genuine issue of material fact that Officer Stanton knowingly included false facts in his incident report.

Beal also complains that Officer Stanton focused the investigation solely on Beal even though there was evidence that Cassel and Harrington had committed a crime. Specifically, Beal says he told Officer Stanton that Cassel and Harrington had assaulted and battered him in the Walmart parking lot. Officer Stanton's report acknowledges Beal's allegations that he was "jumped" by two men "without reason." Still, we fail to see how Officer Stanton's purported failure to adequately investigate Beal's allegations relates to Officer Stanton knowingly including false facts in the incident report about Beal. Cassel's and Harrington's actions bear no relevance on whether Beal provided false identification to members of law enforcement.

Next, Beal argues that Officer Stanton "orchestrated" additional charges against him—the parole violation charges—that lacked probable cause. Officer Stanton compounded this problem, Beal alleges, when he gave false testimony at Beal's parole revocation hearing about witnessing damage to the Sorento and Taurus, testimony which convinced the hearing officer of Beal's guilt on that charge. As already stated, the first element of a claim of malicious prosecution that a plaintiff must establish is that "the defendant has initiated a *criminal prosecution* against him[.]" *Matthews*, 456 Mich at 378 (emphasis added). But "parole revocation proceedings are not prosecutions." *In re Parole of Bivings*, 242 Mich App 363, 369; 619 NW2d 163 (2000). "[A] paroled prisoner remains in the legal custody and under the control of the [MDOC]," and matters of parole revocation generally fall "within the broad discretion of the parole board." *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003). The purpose of parole revocation proceedings is to determine whether a paroled prisoner violated a condition of parole—not whether the paroled prisoner actually committed a particular crime. See MCL 791.240a(8) to (10). Because Officer Stanton's testimony at the parole revocation hearing did not result in the initiation of a criminal prosecution against Beal, he cannot rely on this testimony to support his claim of malicious prosecution. In sum, the trial court did not err by granting summary disposition in favor of Officer Stanton on the malicious prosecution claim.

IV. GROSS NEGLIGENCE

Next, Beal argues that the trial court erred by granting summary disposition in favor of Officer Stanton on the gross negligence claim.

The GTLA "affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Beals v Michigan*, 497 Mich 363, 370; 871 NW2d 5 (2015). "The GTLA provides several exceptions to this general rule, all of which must be narrowly construed." *Id*. Relevant to this appeal, "[a]n employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury." *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006), citing MCL 691.1407(2).

There is no dispute Officer Stanton was an employee of a governmental agency and acting within the scope of his employment at all relevant times. Therefore, Officer Stanton is entitled to governmental immunity unless he was grossly negligent and his gross negligence was the proximate cause of Beal's alleged injuries. *Id*. We need not decide whether there was evidence that Officer Stanton acted with gross negligence because even assuming that he did, a reasonable trier of fact could not conclude that Officer Stanton's conduct was "the proximate cause" of any injury to Beal.

Our Supreme Court has interpreted "the proximate cause" for purposes of MCL 691.1407(2)(c) to mean "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 446; 613 NW2d 307 (2000). "Determining whether an actor's conduct was 'the proximate cause' under the GTLA does not involve a weighing of factual causes." *Ray v Swager*, 501 Mich 52, 74; 903 NW2d 366 (2017). So long as the defendant's actions were a factual cause, this Court must then consider the defendant's conduct "alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id*. at 76, citing *Robinson*, 462 Mich at 446. A plaintiff may rely on circumstantial evidence to establish causation, but the circumstantial proof "must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994). Similarly, "[a] valid theory of causation . . . must be based on facts in evidence." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). "If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law." *Black v Shafer*, 499 Mich 950, 951; 879 NW2d 642 (2016).

Beal's claims of gross negligence largely fall into two buckets: (1) Officer Stanton failed to properly investigate the December 3, 2014 incident, and (2) Officer Stanton "creat[ed] a story" during his parole hearing testimony in support of the claim that Beal rammed the Sorento into the Taurus. All of Beal's claimed injuries in this case stem from his incarceration, so we must consider whether the alleged gross negligence by Officer Stanton was "the proximate cause" of the incarceration. To refresh, Beal was arrested on December 3, 2014 and taken into MDOC custody. He readily admits that he had two outstanding warrants at the time: a parole absconding warrant and a bench warrant. At a parole revocation hearing on January 16, 2015, Beal pleaded guilty to the absconding charge. The hearing officer also found Beal guilty of one count of engaging in "assaultive, abusive, threatening and/or intimidating behavior by ramming [his] vehicle into" Harrington's vehicle. Beal's parole was revoked, and he was denied parole for a 12-month period, which was soon after extended to an 18-month period. Then, on June 29, 2015, Beal was sentenced in Washtenaw Circuit Court for the 2013 convictions for which he had failed to appear. Beal was ultimately granted parole and served a 23-month prison sentence before his release in May 2017.

Beal attributes his period of incarceration from December 3, 2014 to June 28, 2015 to the absconding and assaultive behavior violations. Beal claims that Officer Stanton's alleged gross negligence was the proximate cause of his injuries from this extended incarceration. Below, Beal offered Grimm's affidavit as evidence that, had Beal only been found guilty of absconding, he would have served no more than 10 days of incarceration. Beal therefore posits that Officer Stanton's testimony at the parole revocation hearing led to the guilty finding on the assaultive behavior violation, which contributed to additional and unwarranted incarceration. The trial court declined to consider Grimm's affidavit when deciding the motion for summary disposition, which Beal argues was error.[5] Properly considered, Beal contends that the affidavit creates a genuine issue of material fact on proximate causation.

Affidavits offered in opposition to a motion for summary disposition under MCR 2.116(C)(10) "shall only be considered to the extent that the content or substance would be admissible as evidence to . . . deny the grounds stated in the motion." MCR 2.116(G)(6). That is, for the trial court to consider evidence at the summary disposition stage, the evidence "does not have to be in admissible form" but it must be "substantively admissible." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Beal offered Grimm's affidavit as expert testimony on Parole Board sentencing policy. Before expert testimony is admitted, the trial court is required by MRE 702 "to ensure that each aspect of an expert witness's proffered testimony . . . is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779; 685 NW2d 391 (2004). "Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Edry v Adelman*, 486 Mich 634, 642; 786 NW2d 567 (2010). An expert witness may offer testimony if "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." MRE 702.

Grimm worked for the MDOC from 2009 to 2018 as "an Absconder Recovery Unit Investigator." As part of Grimm's duties, she "worked closely with MDOC personnel and was familiar with the MDOC parole system, parole violation hearing process, and parole scoring, policies and procedures." Grimm reviewed Beal's MDOC file, which included his full criminal history, parole terms, and parole violation charges and outcomes. Grimm opined that Beal's guilty plea to absconding from parole, by itself, would have resulted in a term of incarceration not exceeding 10 days. She also concluded that the Parole Board's decision to instead deny parole to Beal for 18 months was attributable solely to its finding that Beal rammed his vehicle into Harrington's vehicle. Officer Stanton's testimony, Grimm surmised, was the "key evidence" supporting this finding of guilt.

Grimm's affidavit is rife with speculation and unsupported by the facts and the law. Grimm offers no factual basis for her opinion that the absconding violation would have resulted in no more

---

[5] While the trial court did not expressly exclude the affidavit or disqualify Grimm as an expert, it is clear from the summary disposition hearing transcript that the court gave no weight to the affidavit.

than 10 days' imprisonment, besides generic references to her experience working within the MDOC parole system.[6]  That cannot render the statements in her affidavit substantively admissible.  See *Edry*, 486 Mich at 642.  Like the trial court, we similarly decline to consider the affidavit on our de novo review of the trial court's grant of summary disposition to Officer Stanton.

Grimm's affidavit seemingly ignores MCL 791.238(2), which provides that "[a] prisoner violating the provisions of his or her parole and for whose return a warrant has been issued . . . is treated as an escaped prisoner and is liable, when arrested, to serve out the *unexpired portion of his or her maximum imprisonment*."  (Emphasis added).  In other words, the Parole Board had the discretion to order that Beal—who had absconded and had a warrant issued for his arrest—serve the years-long remainder of the maximum sentence on his 2009 felonious assault conviction.[7]  See MCL 791.238(2).  See also *Jones*, 468 Mich at 652 (noting that parole decisions generally "lie solely within the broad discretion of the parole board.").  Additionally, the March 2015 notice revoking Beal's parole included the hearing officer's findings that Beal had absconded for nearly two years, provided statements under oath that were proven false, and displayed no accountability or remorse.  Simply put, Beal cannot show that he would not have received a term of imprisonment lasting at least through June 29, 2015 for the absconding violation alone.  Thus, Grimm's unsupported predictions aside, Beal has not established a genuine issue of material fact that Officer Stanton's parole hearing testimony about Beal ramming his car into Harrington's car contributed to Beal serving any added incarceration.  Without any substantively admissible evidence that Officer Stanton was the proximate cause of any injuries to Beal, we conclude that the trial court did not err by granting summary disposition on the gross negligence claim.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett

---

[6] Grimm's proffered expert testimony is akin to an expert speculating that a trial judge would have imposed a particular minimum sentence on an offender, despite the trial judge's discretion to sentence the offender within a guidelines range, or to even depart from those guidelines if reasonable.  See *People v Steanhouse*, 500 Mich 453, 474-475; 902 NW2d 327 (2017).

[7] Officer Stanton submitted the affidavit of Kimberly Todd, a Department Analyst in the MDOC's Sentence Processing Unit, with his motion for summary disposition.  Todd explained:

> Mr. Beal's incarceration from December 3, 2014 through the date of his release on May 31, 2017 was attributable entirely to a combination of (i) his status as a parole absconder/violator at the time of his arrest on December 3, 2014 and subsequent continued service towards the eight (8)-year maximum sentence on the 2009 conviction, and (ii) his mandatory fulfillment of the minimum sentence of twenty-three (23) months handed down on June 29, 2015 in relation to the 2013 convictions incurred while Beal was on parole.