*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE R. DEROSE and GILBERT C. F. WHITE,

        Plaintiffs-Appellees,

v

LEON ROSELL RODGERS and CAPITAL AREA TRANSPORTATION AUTHORITY,

        Defendants-Appellants.

UNPUBLISHED
July 09, 2025
9:38 AM

Nos. 368995; 369021
Ingham Circuit Court
LC No. 21-000547-NI

GILBERT C. F. WHITE,

        Plaintiff-Appellee,

v

CAPITAL AREA TRANSPORTATION AUTHORITY,

        Defendant-Appellant.

Nos. 368996; 369022
Ingham Circuit Court
LC No. 22-000032-NF

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

Defendants, Capital Area Transportation Authority (CATA) and Leon Rosell Rodgers, appeal the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7) and (C)(10).[1] Plaintiffs, Gilbert White and Michelle DeRose, brought this action after

---

[1] Defendants appealed as of right the trial court's order to the extent that it denied defendants' motion for summary disposition under MCR 2.116(C)(7). Defendants then sought leave to appeal

-1-

they were involved in a motor-vehicle collision with a CATA bus driven by Rodgers. Defendants' motion sought dismissal of plaintiffs' claims seeking to recover (1) no-fault benefits from CATA, (2) damages from CATA for Rodgers' alleged negligence, and (3) damages from Rodgers for his alleged gross negligence. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The collision at issue occurred when plaintiffs, while riding a motorcycle, were struck by a CATA bus operated by Rodgers. The basics of the collision are not disputed, but the details are.

As for the basics, the collision occurred in Lansing at the intersection of César Chávez Avenue and Center Street, where there was no relevant traffic control device. Rodgers was driving the CATA bus west on César Chávez at around 10:15 p.m. He planned to turn left onto Center Street, which required passing through the eastbound lane of César Chávez. Rodgers turned on his turn signal before reaching the intersection. Then, once at the intersection, he executed the turn. While the bus was crossing through the eastbound lane of César Chávez, it struck plaintiffs' motorcycle, which was traveling in that eastbound lane.

Turning to the details of the collision, accounts differ about exactly what transpired. Rodgers testified that he did not see plaintiffs' motorcycle at all before the collision—as far as he could tell, "everything was clear" before he turned, but when he made the turn, he heard a noise and stopped, at which time he saw plaintiffs' motorcycle under the bike rack attached to the front of the bus. Several bystanders who witnessed the events leading to the collision testified that plaintiffs' motorcycle was parked shortly before the bus turned, and that plaintiffs pulled out from their parking spot and tried to quickly get in front of the bus before it finished turning, which caused the collision. Several of the bystanders also testified that the bus was stopped and waiting for traffic to clear before it started turning, and all of the bystanders said that the bus started turning before the motorcycle entered the intersection. DeRose could not recall many details of the collision, but White could, and he confirmed that he had just pulled out of a parking spot before the collision occurred. White testified that the bus was moving when he saw it, and it had its signal on. White said that he tried to make eye contact with the driver—Rodgers—to make sure that he saw White, but Rodgers was either not looking or was looking elsewhere. White testified that he nevertheless proceeded to drive the motorcycle through the intersection, at which point the bus hit his motorcycle. According to White, he entered the intersection before the bus did.

Lansing Police Department Officer Jacob Mills investigated the collision and spoke with witnesses. Officer Mills prepared a report of the collision in which he concluded that Rodgers was at fault for failing to yield to oncoming traffic while making a left turn. Rodgers was not given a ticket, however. Officer Mills was deposed as part of this case, but he was unable to recall many

---

the trial court's order to the extent that it denied defendants' motion for summary disposition under MCR 2.116(C)(10). This Court granted defendants' application and consolidated the appeals. *Michelle R Derose v Leon Rosell Rodgers*, unpublished order of the Court of Appeals, entered March 12, 2024 (Docket No. 369021); *Michelle R Derose v Leon Rosell Rodgers*, unpublished order of the Court of Appeals, entered March 12, 2024 (Docket No. 369022).

of the details of his investigation. Several of the bystanders who were deposed as part of this action testified that Officer Mills' report did not accurately reflect the statements they gave to him.

Plaintiffs filed two actions against CATA and Rodgers, which essentially alleged three claims. First, plaintiffs alleged that Rodgers was liable to plaintiffs because he operated the bus in a grossly-negligent manner, and that he could not claim governmental immunity for such conduct pursuant to MCL 691.1407(2). Second, plaintiffs alleged that CATA was liable to plaintiffs for Rodgers' negligent operation of the bus, and that CATA could not claim governmental immunity for Rodgers' conduct pursuant to MCL 691.1405. Third, plaintiffs claimed that CATA—who was a self-insured no-fault provider—owed plaintiffs no-fault benefits that CATA was unreasonably refusing to pay.

Following discovery, defendants moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10). Defendants argued that plaintiffs' claim against Rodgers should be dismissed because he did not breach any duty owed to plaintiffs; rather, he acted as a reasonably prudent driver would—he stopped and turned on his turn signal before making the turn. Such conduct, defendants contended, was not negligent, let alone grossly negligent, so the exception to governmental immunity in MCL 691.1407(2) did not apply. Turning to plaintiffs' claims against CATA, defendants reiterated its argument that Rodgers' conduct was not negligent, emphasizing that all of the bystanders who witnessed the collision testified that Rodgers operated the bus safely, and that White caused the collision by pulling in front of the bus without giving Rodgers enough time to react. Addressing White's testimony that could suggest that Rodgers operated the bus negligently, defendants urged the court to disregard White's testimony because it was "self-serving" and was "flatly contradicted" by the bystanders' testimonies. As for plaintiffs' claim for no-fault benefits, defendants contended that plaintiffs had never provided any evidence showing that CATA had refused to pay any benefit to which plaintiffs were entitled, and that at plaintiffs' depositions, neither plaintiff could identify any claim that had not been paid. Defendants accordingly contended that the evidence in the record suggested that there were no claims left unpaid, so plaintiffs' claim for no-fault benefits had to be dismissed.

In response, as relevant to this appeal, plaintiffs argued that there was, at the very least, a question of fact whether Rodgers' conduct was grossly negligent—and thus also negligent—on the basis of White's testimony and, in particular, Officer Mills' report. Plaintiffs stressed that, if the facts are viewed in the light most favorable to them, Rodgers violated three separate statutes by turning into plaintiffs' motorcycle. Respecting their claim for no-fault benefits, plaintiffs contended that there were "unconfirmed outstanding amounts" of unpaid benefits totaling $81,245.11 to which plaintiffs were entitled and CATA was refusing to pay, but they did not provide any documentary evidence supporting this assertion.

At the hearing on defendants' motion, the trial court listened to the parties' arguments and then delivered a ruling from the bench. The court determined that there were factual questions surrounding how the collision occurred, and consequently concluded that there existed questions of fact about whether Rodgers' conduct was negligent or grossly negligent. Explaining its conclusion on the gross-negligence issue, the court reasoned that a jury could find that Rodgers was grossly negligent if it believed that he "just didn't see a vehicle, it was right there." On plaintiffs' claim for no-fault benefits, the court reasoned that there was a question of fact because

it was "accept[ing]" plaintiffs' assertion that some benefits were "still unpaid." The court later entered an order denying defendants' motion "for the reasons stated on the record."

These appeals followed.

## II. GOVERNMENTAL IMMUNITY

Defendants first argue that the trial court erred by rejecting defendants' arguments that they were entitled governmental immunity. We agree that the trial court erred by refusing to dismiss plaintiffs' claim against Rodgers, but conclude that the court properly refused to dismiss plaintiffs' claim against CATA.

### A. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A claim is properly dismissed under MCR 2.117(C)(7) if the claim is barred by "immunity granted by law. See also *Beals v Michigan*, 497 Mich 363, 370; 871 NW2d 5 (2015). When considering a (C)(7) motion, the court must accept all factual allegations as true unless contradicted by documentary evidence submitted by the parties. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). That documentary evidence can include affidavits, depositions, admissions, or other evidence, and the court must consider all of the evidence presented in the light most favorable to the nonmoving party "to determine whether there is a genuine issue of material fact." *Id*. "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether the claim is barred by immunity is a question for the court to decide as a matter of law." *Beals*, 497 Mich at 370 (quotation marks and citation omitted).

### B. GTLA

Governmental agencies and their employees are generally immune from tort liability under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*. See *Rowland v Washtenaw Co Rd Comm'n*, 477 Mich 197, 202; 731 NW2d 41 (2007); MCL 691.1407. There are exceptions to this immunity, however, and two such exceptions are at issue in this case. The first exception at issue is the so-called motor-vehicle exception, see MCL 691.1405, and the second is the gross-negligence exception for government employees, see MCL 691.1407(2). We address each exception in turn.

### C. MOTOR-VEHICLE EXCEPTION

The motor-vehicle exception to governmental immunity provides, "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]" MCL 691.1405. As is evident from the language of the statute, a defendant can only be liable under this exception "if [the] plaintiff's injuries resulted from 'the negligent operations' of a motor vehicle." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 436; 824 NW2d 318 (2012). To establish negligence, "a plaintiff

must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Id*. at 433. The first and fourth elements do not appear to be in dispute on appeal—plaintiffs were injured by the collision, and as a driver of a motor vehicle, Rodgers owed a duty to "exercise ordinary and reasonable care and caution" in his operation of the vehicle. *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956).

Defendants dispute the second and third elements of plaintiffs' claim, but defendants' arguments are weak. Defendants do not seriously contest that White's testimony, if believed, would establish that Rodgers breached his duty as a driver of a motor vehicle. White testified that he saw Rodgers' bus approaching the intersection and drove his motorcycle into the intersection before Rodgers did, but Rodgers failed to see White and turned the bus into White's motorcycle. Accepting this testimony as true, a jury could readily find that Rodgers breached his duty to exercise ordinary and reasonable care and caution in his operation of the bus by failing to see plaintiffs' motorcycle in the intersection before turning.

Defendants contend that we should disregard White's testimony because it is "self-serving," but that fact alone does not make the testimony inadmissible, nor does it preclude us from considering the testimony. Defendants alternatively contend that we should disregard White's testimony because it is contradicted by the bystanders' testimonies. While defendants are correct that a court considering a motion for summary disposition may disregard testimony that "is blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007), that rule only applies when the testimony "is essentially impossible or is irreconcilably contradicted by unassailable and objective record evidence," *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 476; 957 NW2d 377 (2020). When, like here, the "matter turns on the relative credibility of witnesses," *id*. at 476-477, summary disposition is improper. A jury is free to believe White's testimony and disbelieve the bystanders' testimonies, so viewing the evidence in the light most favorable to plaintiffs, this issue cannot be resolved at the summary-disposition stage.

Defendants insist that plaintiffs cannot recover from defendants because (1) plaintiffs cannot establish that Rodgers "caused" their injuries as required by MCL 500.3135(1) and (2) plaintiffs were more than 50% at fault for the collision, so their recovery was barred by MCL 500.3135(2). We reject both arguments because, in making the arguments, defendants fail to view the evidence in the light most favorable to plaintiffs. Defendants contend that, on the basis of the bystanders' testimonies, White caused the collision by driving in front of the bus. But White's testimony supports that Rodgers caused the collision, so there is a question of fact as to this issue. Likewise, if a jury believes White's testimony, it could readily conclude that plaintiffs were not more than 50% at fault for the collision.

For these reasons, we conclude that the trial court properly denied defendants' motion for summary disposition to the extent that defendants sought dismissal of plaintiffs' claim premised on the motor-vehicle exception to governmental immunity.

## D. GROSS-NEGLIGENCE EXCEPTION

Turning to plaintiffs' claim that Rodgers was grossly negligent, it is well-accepted that government employees "are generally immune from tort liability when they are engaged in the

exercise or discharge of a governmental function." *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017). As stated above, an exception to this immunity exists for a government employee's grossly-negligent conduct. See MCL 691.1407(2).[2] Evidence of ordinary negligence is not enough to establish a material question of fact concerning gross negligence. *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). Rather, "gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The gross-negligence standard suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). An actor is grossly negligent when an objective observer "could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*.

We conclude that, even when viewing the evidence in the light most favorable to plaintiffs, Rodgers' conduct did not rise to the level of gross negligence. It is undisputed that Rodgers approached the intersection with his turn signal on, warning other drivers that he was preparing to turn. Rodgers testified that, at the intersection, as far as he could tell, "everything was clear," so he started to turn. When he heard a noise during the turn, he immediately stopped in the intersection and saw plaintiffs' motorcycle underneath the bike rack attached to the front of the bus. Nothing about these facts suggests that Rodgers' conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). While we agree with the trial court that a jury could conclude that Rodgers "just didn't see" the motorcycle that "was right there," that would only support that Rodgers was negligent, and ordinary negligence is not enough to establish a question of fact as to gross negligence. *Maiden*, 461 Mich at 122.

Plaintiffs contend that their gross-negligence claim is supported by the fact that Rodgers violated several provisions of the Motor Vehicle Code because "[t]hose who violate the Motor Vehicle Code have necessarily engaged in reckless conduct likely to result in injuries which the enactment was designed to prevent." This is incorrect. While the violation of a statute can establish a prima facie claim of *ordinary* negligence, see *Zeni v Anderson*, 397 Mich 117, 122; 243 NW2d 270 (1976), it does not, without more, establish a prima facie claim of *gross* negligence. See *Poppen v Tovey*, 256 Mich App 351, 358; 664 NW2d 269 (2003).

Plaintiffs alternatively argue that Rodgers was grossly negligent because, accepting White's testimony as true, Rodgers must not have been looking at the road while driving. But whether a driver "maintained a reasonable and proper lookout" goes to whether the driver acted negligently. *Johnson v Hughes*, 362 Mich 74, 78; 106 NW2d 223 (1960). Such conduct, standing alone, is not "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

---

[2] For the grant of immunity in MCL 691.1407(2) to apply, the employee must be acting within the scope of their authority and engaged in the exercise or discharge of a governmental function, but it cannot be seriously disputed that both prongs are met here. Indeed, plaintiffs have never challenged defendants' repeated assertions that these prongs are met.

Because the evidence, when viewed in the light most favorable to plaintiffs, does not support that Rodgers' conduct rose to the level of gross negligence, the trial court erred by denying defendants' motion to the extent that it sought dismissal of plaintiffs' claim against Rodgers.

## III. NO-FAULT BENEFITS

Defendants lastly argue that the trial court erred by refusing to dismiss plaintiffs' claim for no-fault benefits under MCR 2.116(C)(10) because there is no record evidence tending to establish that plaintiffs were entitled to benefits that CATA was refusing to pay. We agree.

### A. STANDARD OF REVIEW

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 119. A (C)(10) motion is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006). When reviewing a motion brought under MCR 2.116(C)(10), a court is to consider "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 119-120.

The initial burden in a motion under MCR 2.116(C)(10) rests with the moving party, who can satisfy its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). In response to a properly supported (C)(10) motion, the nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell*, 273 Mich App at 229.

### B. ANALYSIS

Plaintiffs alleged that CATA unreasonably refused to pay for necessary expenses arising from the collision, including medical expenses, lost wages, household replacement services, and other benefits. When defendants moved for summary disposition, they contended that plaintiffs had failed to proffer any evidence demonstrating that CATA had refused to pay plaintiffs benefits to which they were entitled. Defendants supported this assertion with plaintiffs' deposition testimonies, namely their testimonies that they were unaware of any benefits that CATA had failed to pay. In response to defendants' motion, plaintiffs claimed in their brief that there existed "unconfirmed outstanding amounts" of unpaid benefits totaling $81,245.11, but they did not attach any evidence supporting this assertion. The trial court denied defendants' motion because it "accept[ed]" plaintiffs' assertion that some benefits were "still unpaid."

The trial court erred. For plaintiffs to establish that they were owed unpaid no-fault benefits, they obviously had to establish that CATA had not paid them benefits to which they were entitled. When defendants asked plaintiffs at their depositions to identify any no-fault benefits

that CATA had refused to pay, neither plaintiff could identify any. So, defendants sensibly moved for summary disposition, arguing that plaintiffs could not establish their claim for unpaid no-fault benefits, citing plaintiffs' deposition testimonies. This was sufficient to carry defendants' initial burden for their (C)(10) motion because it demonstrated that plaintiffs' evidence was insufficient to establish that CATA had refused to pay them no-fault benefits to which they were entitled. See *Quinto*, 451 Mich at 362.[3] This shifted the burden to plaintiffs to establish that there existed a question of fact whether CATA owed plaintiffs benefits that it was refusing to pay. To carry this burden, plaintiffs had to present an affidavit or other documentary evidence supporting their claim. See *Campbell*, 273 Mich App at 229; MCR 2.116(G)(4). Rather than doing so, plaintiffs merely asserted in their response to defendants' motion that CATA owed them benefits that it was refusing to pay. It is well-established that, to survive a (C)(10) motion, a plaintiff must come forth with actual evidence supporting their claim, and that "the mere possibility that the claim might be supported by evidence" is insufficient. *Maiden*, 461 Mich at 121.[4] Accordingly, plaintiffs' response was insufficient to create a question of fact, and the trial court erred by denying defendants' request to dismiss plaintiffs' claim for no-fault benefits.

## IV. CONCLUSION

We affirm the trial court's denial of defendants' motion to the extent that it sought dismissal of plaintiffs' claim against CATA pursuant to the motor-vehicle exception to governmental immunity. As explained, a question of fact exists as to ordinary negligence in Rodgers' operation of the CATA bus. But we reverse the trial court's decision refusing to dismiss plaintiffs' claim against Rodgers because, when viewing the evidence in the light most favorable to plaintiffs, no reasonable juror could find that Rodgers' conduct rose to the level of gross negligence. We likewise reverse the trial court's decision refusing to dismiss plaintiffs' claim against CATA for no-fault benefits because plaintiffs failed to provide any evidence supporting their assertion that CATA was refusing to pay no-fault benefits to which plaintiffs were entitled.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin

---

[3] Plaintiffs contend that defendants' motion merely contested the extent of their liability, but that is not true. Defendants argued that CATA was not liable for any unpaid no-fault benefits because it had paid all of the benefits to which plaintiffs were entitled.

[4] Plaintiffs complain that, as patients not directly involved in the medical-billing process, they lacked personal knowledge about their medical bills, and, at any rate, "medical treatments and billings are a fluid process" that change over time. Neither fact, however, relieved plaintiffs (or their counsel) of their burden of furnishing evidence to support their claim.